JOHN ALLEN
·vs.
WILLIAM BURKE.
   }     DECEMBER TERM, 1849.

[INJUNCTION—SPECIFIC PERFORMANCE—PRACTICE.]

Upon a bill for a specific execution of an agreement and an injunction, it is clear, that if upon the plaintiff's case, as made out by his bill, he is not entitled to a specific execution of the agreement set up by him, he cannot be entitled to an injunction, which is only ancillary to the principal object of the suit.

It is well settled that the plaintiff must recover upon the case made by his bill, and that a defendant, although he answers it, may, at the hearing, object, that the case made in the bill does not entitle the party to equitable relief.

The bill seeks the specific execution of a parol contract or agreement for a lease of certain premises, in the city of Baltimore, occupied and used for the purpose of opening and exporting oysters. It avers that the agreement was entered into sometime in the month of August, 1848, and that the plaintiff was to receive for rent, all the oyster shells produced from the establishment, be their value more or less, but does not state *when the lease was to expire.*

HELD—

That the contract was not set out in the bill, with the necessary degree of certainty to enable the court to decree its specific execution, one of the essential terms of the agreement, viz. how long the lease was to continue not being specified.

[THE bill was filed on the equity side of Baltimore County Court, on the 7th of December, 1849, by Allen, the complainant, and states, that sometime in the summer of 1848, about the month of August, the defendant, Burke, entered into a parol contract with the plaintiff, by which the defendant stipulated and agreed, in consideration of the plaintiff's leasing to him certain .premises on Union Dock, in the city of Baltimore, (and of which the defendant in pursuance of such renting, took possession, and now occupies as a part of his establishment for opening and exporting oysters,) that the plaintiff should have and receive therefor all the oyster shells produced from said establishment, be there more or less, as rent for the premises aforesaid.

The bill then states, that in pursuance of this agreement, the plaintiff received and carried away all the shells from the summer and fall of 1848, placed near the premises by the defendant, and has continued to receive them from the defendant up to November, 1849, and never heard the agreement denied till now, when the defendant has refused to deliver the shells to the plaintiff, and has prevented him from taking such shells as are now out on the wharf, under the pretence that no contract was ever made by him with the plaintiff, and has, for the first time, set up another and a very different agreement, whereby the plaintiff would be subjected to great loss. That defendant, in violation of his contract, has, under this new and pretended contract thus set up by him, instituted suit against the plaintiff for the value of the shells he has received, and since the institution of said suit, has taken away a part and will carry off all the shells now on the wharf, which are rightfully the property of the plaintiff.

The bill, therefore, prays for an injunction restraining the defendant from taking or carrying away said shells until the suit at law should be determined, and for a specific performance of his part of said contract, by the defendant, and for further relief.

The injunction prayed for was granted, and on the 15th of the same month the defendant filed his answer, in which he alleges that the contract set up in the bill is untrue, and denies that any such contract ever existed, but avers that the plaintiff, on or about the month of March, 1847, became the purchaser at public sale, of a leasehold interest for the term of three years in the premises in question. That defendant, who was then in possession of the premises, a day or two after said sale, offered to the plaintiff for his unexpired term, a monthly rent of $20, with the privilege to him, said Allen, to take the shells of all oysters opened on said lot at the rate of $2\frac{1}{2}$ cents per bushel. That this offer was made upon condition that the plaintiff would put and keep the premises in good and sufficient repair to enable the defendant to carry on his business, as a dealer and exporter of oysters. That this offer was agreed to

and accepted by the complainant, who set about making the necessary repairs, but in such an insufficient manner were said repairs made, that defendant sustained great loss by reason of the freezing of oysters placed upon said premises. That at the time this contract was made, it was believed by both parties thereto, that the amount of shells would far exceed the monied rent agreed to be paid. That this contract was continued from its formation until the summer of 1848, when respondent wishing to enlarge his business, made propositions to the plaintiff, that if he, the plaintiff, would make certain specified additional repairs, he, the defendant, would increase the rent to $25 per month, with the same privilege of taking all the shells made upon the premises, at 2½ cents per bushel. That the plaintiff accepted this proposition, and thereupon commenced the required repairs, but failed to complete the same, and respondent was forced to go on and finish them at his own expense.

The answer then states, that some time in November, 1849, respondent presented a bill to plaintiffs for the shells so taken away by him, and demanded a settlement with said plaintiff, when, for the first time, and to the great surprise of defendant, he set up the agreement alleged in his bill of complaint, which respondent then, and has always since, denied. That defendant then instituted the suit at law, to coerce the plaintiff into compliance with the agreement really entered into by them. That at the time the agreement was entered into, both parties believed the amount of shells produced would not be less than 20,000 bushels per year. That the market value of such shells is from 3 to 4 cents per bushel, with a steady demand and increasing value. That at such estimate, the yearly value of the shells, taken by the plaintiff, would amount to the sum of $700, but that, in fact, the amount of shells made, exceeded 30,000 bushels per annum. The answer then prays for a dissolution of the injunction, and that the parties may be permitted to proceed, at law, to settle their disputes.

The motion to dissolve was entered, and an order passed, setting the cause down for hearing upon five days notice, given to the one party by the other, with leave for either party to

take depositions before a commissioner, upon serving one day's notice on the opposite side. Under this order, much testimony was taken, the nature of which, the Chancellor's opinion renders it unnecessary to state. The cause was removed to this court, and came on for hearing, on motion to dissolve the injunction, when, after argument, the following opinion was delivered :]

THE CHANCELLOR :

This case transferred from the equity side of Baltimore County Court, has been argued by the counsel of the parties, upon the motion to dissolve the injunction, and is now laid before this court, for decision upon that motion.

The argument has turned very much upon the proof taken under the Act of Assembly, and order of Baltimore County Court passed in pursuance thereof; but I am relieved from the necessity of expressing an opinion upon the evidence, by the view which I have taken of the plaintiff's case, as presented by his · bill. The object of the bill, is, to enforce the specific performance of the agreement therein referred to, and for an injunction in the meantime, to restrain the defendant from taking and carrying away from the premises, or from the wharf, in the proceedings described, a quantity of oyster shells deposited, and being there at that time. And it seems to me quite clear, that if upon the plaintiff's case, as exposed by his bill, he is not entitled to a specific execution of the agreement set up by him, he cannot be entitled to the injunction which is only ancillary to the principal object of the suit.

It is also well settled, that the plaintiff must recover upon the case made by his bill, and that a defendant, although he answers it, may at the hearing object, that the case made in the bill does not entitle the party to equitable relief. *Chambers* vs. *Chalmers et al.,* 4 *Gill & Johns.,* 438.

The bill in this case prays that the defendant may be compelled specifically to perform an agreement for a lease, which it is alleged, was by parol, in the summer of 1848, (about the month of August,) entered into between the plaintiff and de-

fendant.  The premises, stated to have been so leased by the
complainant, are described as being on Union Dock, in the city
of Baltimore, and it is charged, that the defendant took posses-
sion thereof in pursuance of said renting, and now occupies,
and uses them for opening and exporting oysters, and that the
plaintiff was to have and receive therefor, all the oyster shells,
produced from said establishment, be their value more or less,
as rent for the premises aforesaid.  The bill also states, that
the plaintiff, in pursuance of the agreement, received and carried
away all the shells, from the summer and fall of 1848, until
November, 1849, when, for the first time, the defendant denied
his right, and prevented the plaintiff from taking the shells
away.  And there is also an averment that the defendant had
sued the plaintiff at law, for the value of the shells he had re-
ceived, &c.

The bill then seeks to enforce the specific performance of
the lease, or the agreement for a lease, therein set up.  But
what sort of an agreement is it, of which this court is asked to
enforce the execution ?  It is stated to have been entered into
some time in the summer of 1848, about the month of August,
*but when is the lease to expire ?*  There is to be a specific, that
is, an exact, execution of the agreement set up in the bill ; but
how can the court decree any such execution, when it is not
informed of one of the essential terms of the agreement it is
asked to enforce ?  Is the defendant to be compelled to perform
the alleged contract on his part, for one year, or for ten, of for
any other number of years ?  It is no answer to say, that the
duration of the lease, appears by the answer of the defendant,
because the plaintiff's right to a decree, must depend upon the
case made by his bill, and the proof in support of it.  If the
answer of the defendant is relied on to show the agreement,
then it will be found, that one, essentially differing from that
contended for by the plaintiff, was actually made, and, of course,
the plaintiff would have no title to the aid of the court.  The
plaintiff cannot ask for the interposition of the court in his fa-
vor, unless he states and proves an agreement sufficiently cer-
tain, and definite, to make it confident that the decree will en-

force the agreement of the parties. In *Parkhurst* vs. *Van Cortlandt*, 1 *Johns. Ch. Rep.*, 273, the necessity of certainty and precision, in the terms of the agreement, to enable the court to see clearly what is the contract of the parties, is dwelt upon, and in that case, it was said that the uncertainty of the terms of the agreement, was an insuperable objection to the specific execution sought by the bill.

My opinion, therefore, is, that the contract in this case, is not set out in the bill, with the necessary degree of certainty to enable the court to decree its specific execution. It is impossible, looking at the bill, to say for what period the defendant should be required to comply with the stipulations sought to be enforced against him ; and, therefore, without intimating an opinion upon the evidence or upon the question affecting the jurisdiction of the court, I think the injunction must be dissolved.

Z. Collins Lee for Complainant.
John H. Ing for Defendant.