CYRUS ELWOOD BROWN *vs.* ALPHONSO MUNGER.

February 10, 1890.

**Vendor and Purchaser — Sufficiency of Contract — Mutuality. —** An
agreement for the sale, exchange, or conveyance of real property is suffi-
cient, if it contains the essential terms of the contract, expressed with
such certainty that they may be understood from the instrument itself.
The legal principle that contracts must be mutual does not mean that
each party must be entitled to the same remedy for a breach by the other.
There must be mutuality of obligation, but not necessarily mutuality of
remedy.

**Same—Contract to Convey Quantity of Land—Vendor's Right of
Selection.—**In the case at bar, defendant agreed to convey, and plaintiff
stipulated that he would receive, in part-payment of a certain leasehold
interest, 320 acres of good, tillable land in Dakota, to be situated within
nine miles of a railway station. *Held,* that this conferred upon the de-
fendant the right to select and appropriate to the contract the tract or
tracts of land, subject to the requirements as to quality, quantity, and lo-
cation, above mentioned.

**Same—Specific Performance—Mutuality of Remedy, when Requisite.**
In order that specific performance of an agreement for the sale, ex-
change, or conveyance of land be decreed, it is not absolutely essential
that there be mutuality of remedy *ab initio.* But the mutual enforcement
of the contract should be practicable when specific performance is ad-
judged. The court should then be able to enforce by its decree all of the
terms, *in præsenti;* should have the power to supervise the performance
of the contract by each of the parties, and in all of its parts.

**Same—Specific Performance Decreed.**—The answer in this case alleged that the defendant, who demanded specific performance by the plaintiff, had selected out, set apart, and appropriated to the contract before mentioned, certain described tracts of land completely answering the requirements of the instrument as to quality, quantity, and location; had executed proper conveyances thereof, tendered the same to plaintiff, and in all things stood prepared, and willing to perform, the contract on his part. *Held*, upon such allegations, that he was entitled to a decree as demanded.

Appeal by defendant from an order of the district court for Hennepin county, *Smith*, J., presiding, sustaining a demurrer to his answer. ·

*M. J. Gordon* and *Stocker & Matchan*, for appellant.

*Ferguson & Kneeland*, for respondent.

COLLINS, J. This action was instituted by the plaintiff to cancel and set aside a contract made and entered into between the parties, and which the plaintiff alleges has been placed on record by the defendant. From a copy which is made a part of the complaint, it appears that the plaintiff sold and agreed to convey to the defendant a leasehold estate in and upon certain described real property, situated in the city of Minneapolis, together with the buildings and improvements thereon, fully completed in accordance with certain specifications; the title to said estate to be perfect, but subject to leases already executed by plaintiff on part of the premises. In consideration of which, the defendant agreed to pay the sum of $70,000, of which $20,000 was to be in cash, the balance, $50,000, in 5,000 acres of pine lands in the state of Georgia; "also, three hundred and twenty acres of land in Dakota territory, * * * said 320 acres of Dakota lands to be situate within nine miles, at least, of a railroad station, and to be good, tillable land." There were other stipulations in the contract, relative to taxes, abstracts of title, form of conveyances, and time of performance, which need not be specially mentioned. The complaint sets up, as a reason for the cancellation demanded, fraudulent representations in regard to the pine lands, made by defendant to plaintiff, by and through which he was induced to enter into the contract; and, further, (wholly unnecessarily, if it be

the fact,) that the Dakota lands are not described with sufficient certainty in said contract, and hence it is void. The answer admitted the execution and record of the contract, but denied the making of the fraudulent representations in regard to the pine lands. It averred that defendant duly furnished the abstract of title required by the contract, and tendered the money in accordance with its terms; that defendant selected 320 acres of land, answering in all respects that provided for in the contract, executed in due form good and sufficient warranty deeds thereof, and tendered the same to plaintiff, who has refused to accept the same; that he stands ready and willing to pay the money required, and to properly convey the lands mentioned, upon plaintiff's compliance with his part of the agreement. Among other relief demanded, he seeks a decree that plaintiff specifically perform. Upon the presentation of this appeal it was stipulated that the only questions to be determined were the validity of the agreement entered into between the parties, and, should it be declared a valid contract, the right of the defendant to exact specific performance by the plaintiff, as demanded in the answer. All other questions were expressly waived, that the merits of the pleadings might be passed upon. This course was also pursued upon the argument of the demurrer in the court below, which court, holding the writing ineffectual for all purposes, sustained the last-mentioned pleading. From a note attached to the order, we are informed that this conclusion was reached because of the indefiniteness and uncertainty of that part of the instrument which provides that payment for plaintiff's property shall be made, in part, with 320 acres of Dakota lands; that, because a court of equity could not compel specific performance by the defendant,—the agreement being silent as to location, value, and method of selecting these lands,—there existed so great an uncertainty that compensation in damages could not be awarded, should defendant decline to fulfil on his part; that there was no mutuality of obligation, and hence neither party was bound.

It stands admitted that defendant could not have been adjudged to perform specifically, in the absence of any description of the land in Dakota which he was to convey; but it does not follow that the contract lacked consideration or possessed no binding force; nor, in

case of a violation of its terms by defendant, or upon his refusal to deed 320 acres answering the conditions of his agreement, that plaintiff would be remediless. The legal principle that contracts must be mutual does not mean that each party must be entitled to the same remedy for a breach by the other; and it is nowhere asserted that, because there may not be a mutuality of remedy as between the parties, there is no mutuality of obligation. An agreement, properly executed, for the sale, exchange, or conveyance of real property, is sufficient if it contains the essential terms of the contract, expressed with such certainty that they may be understood from the instrument itself. In that under consideration, the plaintiff stipulated to accept, and defendant agreed to convey, 320 acres of good, tillable land in Dakota within nine miles of a railway station. It is safe to say, and plaintiff undoubtedly knew, that in the territory named there were thousands of acres fully answering to this general description, and that he had bargained to receive any 320 of these thousands in part-payment for his leasehold estate. By so agreeing, and by requiring nothing more definite as to value or location, he conferred upon defendant the right to select the tract or tracts of land; the absolute power to designate and convey any land which answered to the contract as to quantity, quality, and location. The language in the contract upon this point cannot be distinguished from that construed in *Burgon* v. *Cabanne, supra,* p. 267, (decided at this term.) If the defendant selected and conveyed the agreed number of acres of the specified quality, and within the stipulated distance of a station, he fully and fairly performed his contract. Had he refused to select and deed 320 acres which in all respects conformed to the terms expressed in the writing, there could have been no difficulty in accurately measuring plaintiff's damages. The value of real property of this character, good, tillable lands, located not to exceed nine miles from a railway station, could easily be ascertained; for it is common knowledge that scores of acres strictly answering this description are sold in Dakota every day. The exact number of acres to be conveyed was specified, the quality thereof was precisely stated; and, while there was no attempt to definitely describe the tract or parcel, a limit upon location was fixed which would materially aid in

rendering its value capable of being determined with certainty enough for all practical purposes. We cannot agree with the trial court in its conclusion that, because of indefiniteness and uncertainty, compensation in damages could not have been awarded either plaintiff or defendant upon a breach of the agreement by the other.

This view of the legal aspect of the case leads to a consideration of the question made prominent,—the power of the court to decree specific performance when but one of the parties can invoke that remedy. It has been stated repeatedly, in connection with this subject, that courts of equity act upon the ground that the remedy, if it exists at all, ought to be mutual and reciprocal, as well for the vendor as for the purchaser. The general rule, universally laid down, is that, to entitle either party to specific performance, there must be a mutuality of remedy as well as of obligation. True it is that a mutuality of obligation must exist when the contract is concluded. If it lack this element *ab initio*, no subsequent act of the party who seeks to enforce it can obviate the objection, and render the contract capable of specific performance. But it is not indispensable that at the conclusion of the agreement there shall be a mutuality of remedy, although it has been so asserted in some of the text-books, and distinctly affirmed in adjudicated cases. It is, however, impossible to determine from the text-books, or by an examination of the cases referred to, upon what equitable principle the proposition rests, or has been placed by those who have announced it. When, from the nature of the contract, it is not in the power of the court to compel a full and complete specific execution by both parties at the time coercion is demanded by one, the reason is obvious why specific performance should not be exacted on one side, and the contract left wholly or partly unperformed on the other. Cases frequently cited in support of the statement that there must be mutuality of remedy as well as of obligation, *ab initio*, are simply authority for the easily understood proposition before stated, that mutual enforcement of the contract must be practicable when specific performance is to be decreed. The court should then be able to enforce all of the terms of the contract at once, *in præsenti;* should have the power to superintend the performance of the conditions of the contract by each of the parties,

and in all of its parts. Of this class of cases may be mentioned *Clarke* v. *Price,* 2 Wils. Ch. 157; *Kemble* v. *Kean,* 6 Sim. 333; *Stocker* v. *Wedderburn,* 3 Kay & J. 393; *Pickering* v. *Bishop of Ely,* 2 Younge & C. Ch. 249, 267.

The case of *Cooper* v. *Pena,* 21 Cal. 403, is a noticeable one, because it has been so frequently put forward as an illustration of the doctrine that there must be mutuality of remedy at the inception, which must appear from the contract itself; that where one has agreed to render personal services, in consideration of which he is to receive a conveyance of certain lands, a court of equity will refuse specific performance, and decline to compel the execution and delivery of the conveyance, although the services have been wholly performed. An examination of the facts in the case, in connection with the opinion of the court, shows that when the action was brought the services agreed upon *had not* been wholly rendered. The court refused relief upon the express ground that, so far as the contract remained unperformed, the plaintiff could not be compelled to complete it, and hence the element of mutuality was wanting at the very moment the decree was required. It will also be discovered, upon reading the earlier cases, that nothing more was intended by the frequently repeated statement that mutuality of remedy is necessary, than that it exist at the time the court is asked to protect and enforce the rights of the parties by its decree.

Where a party contracted to perform personal or professional services, in consideration for which it was agreed that he should receive certain real estate, specific performance was decreed in his favor, after he had rendered the services, although at the inception of the contract he could not have been compelled to perform the same. *Allen* v. *Cerro Gordo Co.,* 40 Iowa, 349. So, where a vendor of real property has no valid title at the time he undertakes in good faith to convey, and is therefore unable to then perform, but subsequently and seasonably acquires title, so that he can satisfy the terms and conditions of his contract, he can enforce the same, and can also be coerced at the suit of the purchaser. *Townshend* v. *Goodfellow,* 40 Minn. 312, (41 N. W. Rep. 1056;) *Gregory* v. *Christian, supra,* p. 304, (decided at this term;) Pom. Cont. §§ 341, 421.

In the case at bar, although the contract may have been originally, as regards its performance by the defendant, beyond the jurisdiction of the court, the only obstacle in the way has been removed in the manner provided for by the terms of the agreement. The defendant alleges in his answer that he has selected out, set apart, and appropriated to the contract, as he was authorized to do, certain described tracts of land, completely answering the requirements of the instrument as to quantity, quality, and location; that he has properly executed and tendered conveyances thereof, and in all things stands prepared and willing to perform the contract on his part. Upon the allegations of the answer, there is absolutely nothing in the way of a decree which will fully and equitably protect and enforce the rights of both parties. If these allegations prove true, defendant is entitled to specific performance.

Order reversed.