## DANIEL W. HAM vs. ANDREW B. JOHNSON.

Argued Oct. 12, 1893.   Affirmed Oct. 24, 1893.

No. 8375.

**Specific performance of contract to sell real estate.**

Courts of equity will not specifically enforce an executory contract unless it be complete and certain in all of its material and essential terms, or capable of being made complete and certain by reformation.

Appeal by plaintiff, Daniel W. Ham, from a judgment of the District Court of Hennepin County, *Henry G. Hicks*, J., entered June 14, 1893, adjudging that he take nothing by this action and that he pay $39.23 costs.

On January 3, 1891, Andrew B. Johnson, the defendant, made a written contract with plaintiff to convey to him by warranty deed all of section twenty one (21) in Township 140, Range 45, and the southwest quarter of the southeast quarter of section twenty nine (29) in Township 140, Range 44 in Clay County, and "lot three (3) in block one (1) in Bloom's Subdivision Addition to Minneapolis," subject to a mortgage on the lot for $1,700. Ham by the contract agreed on his part to assign and convey to Johnson his leasehold interest for ninety seven (97) years in fractional block twenty three (23) in Snyder & Co.'s First Addition to Minneapolis and the seven buildings thereon, "and also to convey to Johnson two lots in Belmont Park, subject to a mortgage of $200 on each." One of the houses on the block was Ham's homestead in which he resided with his wife and family.

Johnson subsequently refused to perform the contract and thereupon Ham brought this action to reform the contract by inserting after the words "Bloom's Subdivision," the words, "of lots twenty four (24) and thirty two (32) of Lawrence & Reeves' out lots," and by striking out the words, "in Belmont Park," and inserting in their place the words, "lots eleven (11) and twelve (12) in block two (2) in Belmont Park Addition to Minneapolis;" and he asked for specific performance of the contract when so reformed.

At the trial on December 27, 1892, it was shown that Ham owned four lots in Belmont Park Addition, encumbered by mortgage for

$200 on each, and that no designation of the two he should convey was ever made by the parties. The Court found that as to whether there was a mutual mistake of fact in reducing the description of the lots in Belmont Park Addition to writing and as to the property to be conveyed, the evidence was conflicting and was not clear and convincing; that Ham pointed out on a map of Minneapolis the general location of the lots referred to, and represented that each lot was worth $600; that he subsequently tendered a deed of two of the lots selected by him; that the erroneous descriptions in the contract as signed were inadvertently made by the draftsman who reduced the contract to writing and that it was signed by each party under a mutual mistake of fact, each supposing that it did correctly describe the property intended to be conveyed. As a conclusion of law the trial court found and directed judgment, that plaintiff take nothing and that defendant recover his costs and disbursements. Judgment was so entered and plaintiff appeals. In this Court the parties argued questions relating to the Homestead of Ham as affecting the contract, but did not discuss the question on which the decision turned.

*George H. Benton,* for appellant.

*Peterson & Kolliner,* for respondent.

COLLINS, J. This action was brought to reform a certain written agreement made by these parties in relation to the exchange of property, so as to correctly express the real contract made by them, and also for a specific performance of the contract as reformed and corrected. The trial court found that, by the terms of the contract as written, the defendant had agreed to convey to plaintiff, by deed of warranty, and upon prompt performance by the latter of his part of the contract, certain described tracts of land in Clay county, and also, subject to a mortgage for $1,700, a certain lot in the city of Minneapolis, in consideration of which the plaintiff had agreed to convey to defendant a leasehold estate held by him upon a fractional block of land in said city, created by a ground lease thereof for ninety-seven years, executed by the owner, with the buildings thereon situated, and also certain subleases held upon the same real property, and plaintiff was also to convey to defendant by warranty deed, but subject to specified mortgages, "two lots in Belmont

Park." There were other stipulations in the contract, of no consequence here for a proper determination of the case.

In the complaint it was alleged, as a ground for reformation and correction of the contract, that it was agreed between the parties that plaintiff should convey to defendant lots Nos. 11 and 12, in block number 2, in Belmont Park Addition to Minneapolis, Hennepin county, Minnesota, according to the plat of said addition of record in said county, but that, by mistake of the draughtsman who reduced the contract to writing, said property was erroneously and defectively described in the words before quoted, which, it is alleged, (and of this there can be no doubt,) described no property at all; and that "in such defective and incomplete condition the written contract was signed and executed by the parties, under a mutual mistake of fact as to its contents."

In passing on these allegations which were put in issue by the answer, the trial court found "that as to whether there was a mutual mistake of fact in reducing said description to writing, and as to what property or lots was intended thereby to be conveyed, the evidence thereon is not clear and convincing except that it does appear that the plaintiff, at the time of making said contract, was the owner of four lots in Belmont Park Addition to the City of Minneapolis; that he pointed out the general location of said lots to defendant on a map of the city," and stated their value. The correctness of this finding is not questioned by any of appellant's assignments of error, and it is obvious that, with it in existence, the court could not reform or correct the written contract, and as a consequence could not decree a specific performance of it, in whole or in part. The contract signed by the parties was incomplete, uncertain, and defective, and could not be made complete or certain, nor could the defect be remedied, according to the findings of fact, and no part of it had been executed. There was nothing to enforce. It is elementary that courts of equity will not specifically enforce any executory contract unless it be complete and certain in all of its material and essential terms, or capable of being made complete and certain. The subject-matter of a contract is one of these terms, and, unless so well defined and described that it can certainly be identified and located by means of extrinsic explanatory evidence, properly admissible in such a

case, the contract is incomplete, uncertain, and wholly incapable of enforcement. A description of property must be so definite as to show what the purchaser supposed he was contracting for, and what the vendor intended to sell, and as to enable the court to ascertain what it is by proper evidence. Pom. Spec. Perf. §§ 145, 152; Fry, Spec. Perf. §§ 317, 325, and cases cited. See, also, *Lanz* v. *McLaughlin*, 14 Minn. 72, (Gil. 55;) *Pierson* v. *Ballard*, 32 Minn. 263, (20 N. W. Rep. 193;) *Nippolt* v. *Kammon*, 39 Minn. 372, (40 N. W. Rep. 266.)

The very marked difference between the attempted description in the case at bar and that before us in *Brown* v. *Munger*, 42 Minn. 482, (44 N. W. Rep. 519,) cited by counsel in the argument, need not be pointed out at this time. As this appeal is already disposed of, we are not required to consider other questions involved. Judgment affirmed.

(Opinion published 56 N. W. Rep. 584.)

Application for reargument denied Nov. 1, 1893.