TAUSSIG et al. v. CORBIN.

WEST DISINFECTING CO. v. SAME.

(Circuit Court of Appeals, Third Circuit. January 11, 1906.)

Nos. 21, 22.

1. SPECIFIC PERFORMANCE—NECESSITY OF CONTRACTUAL RELATION—AGENTS.

Complainant entered into a contract with the patentee of certain disinfecting apparatus and fluids by which he was given for an indefinite time the exclusive right to sell such patented articles in Philadelphia and vicinity, the patentee to furnish him with the same at agreed prices. Defendants were general agents of the patentee, and it was through them that the contract was made, although they were not parties thereto, and they were to furnish the supplies and to collect therefor. After a number of years they purchased the patents and themselves opened a place of business in Philadelphia, where they sold the articles and refused to longer supply complainant. Held, that there was no contractual relation between them and complainant which entitled him to a specific enforcement of the contract against them or to an injunction restraining them from entering into competition with him in his business, since their relation to the contract was in their capacity as agents only and terminated with their agency.

2. SAME—RIGHT TO REMEDY—MUTUALITY.

A contract by which complainant was given the exclusive right to sell in a specified territory certain patented articles to be sold to him by the other party as required, and by which he agreed to push the sale of the articles, the contract to continue so long as he did so, was in effect one for continuing personal service on his part, which he could not specifically enforce in equity for want of mutuality in the remedy.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, §§ 9, 210.

Specific performance of contracts requiring performance of continuous acts, see note to Berlinger Gramophone v. Seaman, 49 C. C. A. 103.]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 132 Fed. 662. See, also, 137 Fed. 151.

John G. Johnson, for appellant.

E. O. Michener, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. These cases were heard and decided together in the court below. They were counter cases, growing out of the same circumstances, and by stipulation were heard here on a single record, so far as the evidence is concerned, but with the pleadings in each case set out in full. From this record, there is some difficulty in gathering the material facts.

On April 16, 1892, Charles M. Corbin, of Philadelphia, entered into an agreement in writing with one Robert S. West, of Cleveland, Ohio, who was the inventor and patentee of certain disinfecting appliances and fluids, whereby the said West agreed to give to the said Corbin, "sole, exclusive control of West Disinfectors and the disinfecting fluid "Chloro-Naptholeum," and all appliances connected with the sale of the same, patented and manufactured by said Robert S. West, to furnish all necessary advertising matter, and to fill all orders promptly." The concession of said agreement was confined to a territory within a radius of 25 miles about Philadelphia, and was to hold good indefinitely, as long as the said Corbin should "exercise all reasonable efforts and energy to push the sale of the goods and to bring them before the public in his territory by personal solicitation, or by means of canvassers, and in return, to pay promptly for all goods ordered as specified on bill of sale. Goods to be charged by E. Taussig & Co., who represent Robert S. West in the Eastern states, and payments to be made to them." This agreement was written by and procured through said E. Taussig & Co., who were first the general agents, and subsequently the assignees, of said West. As such general agents, they received and filled all orders made by Corbin under the agreement, and made settlements with him in payment of the same. By an agreement dated August 4, 1898, the said Taussig & Co., purchased from the said West all his interest in his automatic disinfectors and Chloro-Naptholeum, and all patents and trade-marks connected therewith, and established an office in the city of Philadelphia, for the conduct of their business, under the name of the "West Disinfecting Company."

On December 5, 1898, a bill was filed by said Corbin against said Taussig & Co., in the common pleas of Pennsylvania, for Philadelphia county, which was duly removed to the court below by the defendants, in March, 1899. The bill alleged full knowledge on the part of E. Taussig & Co. of the terms and conditions of the said agreement between the complainant and the said West, and complains that with such knowledge, the purchase from West, above referred to, was made, and that the business established in Philadelphia under the name of the "West Disinfecting Company," by said defendants, was conducted in fraud of complainant's rights under the said agreement; that besides advertising themselves as the West Disinfecting Company,

defendants were soliciting trade among the customers of complainant, had refused to supply complainant with the automatic disinfectors and Chloro-Naptholeum, and had announced to complainant, by writing dated September 7, 1898, that from and after that date they would refuse to fill any further orders received from him, or recognize him in any way. The bill prayed for a decree for specific performance of the agreement made by the said Robert S. West, and that defendants, E. Taussig & Co., should be compelled to furnish and supply to complainant all the goods mentioned in said agreement, as from time to time requested, "and at a fair and proper market price for the same." It also prayed for an injunction, restraining the defendants from selling any of the articles mentioned in said agreement, within the territory named therein, from doing any business of any kind or sort within the said territory, under the name of the West Disinfecting Company, and for an accounting.

The answer of the defendants, E. Taussig & Co., denies that the complainant, Corbin, had any right under the said agreement to use or conduct his business under the name of West Disinfecting Company; and avers that the said trade name, West Disinfecting Company, was first suggested and used by the said Taussig & Co., and could only be used by the said Corbin with their authority and consent, and that in fact it was so used, and only so used by the said Corbin, on circulars and labels on which Corbin's name was printed as agent, said circulars and labels having been furnished by said Taussig & Co. The answer further alleges that the manner in which complainant conducted his business, was at all times, since the execution of the said agreement, subject to the control, and required to be to the satisfaction, of the said Taussig & Co. That for a long time prior to the acts complained of in complainant's bill, his conduct of said business had been most unsatisfactory to them; that they had repeatedly notified him, both orally and in writing, that he was not carrying on his business satisfactorily, and had urged him to push it as required by his contract, and had informed him that, if he did not do so, they would appoint other agents in Philadelphia; that complainant failed, in spite of these repeated notices, to push the sale of the goods, as required by his contract, and that, in consequence, the defendants had established their own agency in Philadelphia, and are using the name "West Disinfecting Company" in the conduct of said business. Defendants also admit their purchase in August, 1898, from the said West, of all his interest in automatic disinfectors and Chloro-Naptholeum, with the patents and trade-mark connected therewith, and further allege, as follows:

"We have not manufactured or sold, since about June, 1894, West's Automatic Disinfectors, under the patent issued to the said Robert S. West. Since said date, we have manufactured and sold exclusively disinfectors under patents issued to ourselves. To the exclusive sale of these disinfectors, complainant has no right under his agreement. Although not bound so to do, we furnished to complainant, from June, 1894, until the 7th day of September, 1898, disinfectors manufactured by us, upon his orders for the same. All such disinfectors were so marked, as to show that they were not manufactured under said West's patents. We are still manufacturing and selling Chloro-Naptholeum. We admit that since September, 1898, we have refused to fill any orders for disinfectors or for Chloro-Naptholeum received from complain-

ant. We deny that our conduct as herein set forth was with intent to cheat or defraud complainant of any rights to which he was entitled, or to break up or destroy his business or prevent him carrying on the same."

On July 18, 1899, after the institution of the suit, and filing of the bill in the court below by Corbin against Taussig & Co., the said Taussig & Co., sold and delivered unto the West Disinfecting Company, Incorporated, a corporation of the state of New York, all of the property and assets of every character and description belonging to the said copartnership of E. Taussig & Co., by which sale, the rights of the said E. Taussig & Co. in the said disinfectors and Chloro-Naptholeum, and the use of the said trade-name "Chloro-Naptholeum," and whatever right the said Taussig & Co. had in the trade name of West Disinfecting Company, passed to the said corporation of that name. Shortly after said sale, the said West Disinfecting Company, Incorporated, filed its bill in the court below against the said C. M. Corbin, making the foregoing allegations and statements, and charging that the said defendant nevertheless continued to do business under the name of the "West Disinfecting Company," and to sell a fluid which he represents to be Chloro-Naptholeum, and that he was the sole person authorized to sell the same; and that he caused to be printed and circulated, and still circulates, a card bearing the following words:

"West Disinfecting Co., C. M. Corbin, Manufacturer Chloro-Naptholine Disinfecting Fluid and Sanitary Appliances. 1228 Filbert Street, Philadelphia, and 702 Girard Building, Broad and Chestnut Streets."

That he has also advertised his business in other ways, under the name of the West Disinfecting Company, and that the fluid which he sells as Chloro-Naptholeum is not that fluid. The bill prays for an injunction, to restrain the said Corbin from doing business under the name of the "West Disinfecting Company," or from selling or offering for sale any fluid under the name of "Chloro-Naptholeum," or of any name similar thereto or in imitation thereof.

The court below, in the suit of Corbin against Taussig & Co., has found that the defendants had, in their business as general agents for these disinfectants, used the name "West Disinfecting Company" "at a far earlier day than anything that Corbin can assign," and that Corbin, in his dealings with the defendants, Taussig & Co., consented to the use of the name "West Disinfecting Co., C. M. Corbin, Agent," in transacting his business for the sale of disinfectants under the West agreement. The court also found that, since the filing by Corbin of his bill, the West Disinfecting Company was organized, and the business of Taussig & Co. transferred to it, including the right to the trade-name "West Disinfecting Co.," and decreed that an injunction against the use by the respondent, Emil Taussig, his employés, etc., of the name "West Disinfecting Co.," as prayed for in the bill, be refused. Other findings of the decree, however, are as follows:

"(1) That the complainant has performed the duties imposed upon him by his agreement with Robert S. West, dated the 16th day of April, 1892. and respondents were not justified in cancelling the same, and that the acts of the respondents in engaging in the sale in Philadelphia of the goods referred to in said agreement from June 1, 1896, to July 18, 1899, constituted a breach of said agreement for which the respondents are liable to complainant in damages.

"(2) That complainant is entitled to the sole and exclusive control of the sale of West Automatic Disinfectors and the disinfecting fluid Chloro-Naptholeum and all appliances connected with the sale of the same patented and manufactured by the said Robert S. West and in all the territory embraced within the city of Philadelphia, Pa., and within a radius of 25 miles about Philadelphia.

"(3) That the respondent Emil Taussig, his employés, agents and servants be and they are perpetually enjoined and restrained from engaging in the sale of West Automatic Disinfectors and the disinfecting fluid Chloro-Naptholeum, and of any and all appliances connected with the same or either of them, patented and manufactured by the said Robert S. West, within the city of Philadelphia, Pa., or within a radius of 25 miles about Philadelphia.

"(4) That said respondent Emil Taussig, his employés, agents and servants be and they are perpetually enjoined from doing or performing any act that will in any wise interfere with the exclusive right of the complainant to sell and control the sale of the West Automatic Disinfectors and the disinfecting fluid Chloro-Naptholeum, and all appliances connected with the sale of the same, patented and manufactured by the said Robert S. West, in the city of Philadelphia, Pa., and within a radius of 25 miles about Philadelphia. But this is not to be construed as requiring the respondent to specifically perform the agreement of April 16, 1892, with the said Robert S. West, with regard to the same, specific performance thereof as against the said respondent being hereby refused.

"(5) That said respondent Emil Taussig as surviving partner of E. Taussig & Co. shall account to the plaintiff for all profits of any business done by said firm between June 1, 1896, up to and including July 18, 1899, in the sale of West Automatic Disinfectors and the disinfecting fluid Chloro-Naptholeum, and all appliances connected with the sale of the same patented and manufactured by the said Robert S. West, in the city of Philadelphia, Pa., and within a radius of 25 miles about Philadelphia; and W. Y. C. Anderson, Esq., is hereby appointed as master to state such account, and the amount of profits that shall be found by the master shall be paid by said respondent to the complainant."

This injunctive decree against Emil Taussig, as surviving partner of E. Taussig & Co., must rest upon some contractual relation established between said firm and the complainant. It is not very clear just what this contractual relation is claimed to be. Taussig & Co. were, it is true, general agents of West, and as such formulated and procured the contract upon which complainant's suit is founded. To the written contract, however, they are not parties. Whatever contractual obligation, if any, therefore, existed between the complainant and the defendants, Taussig & Co., must have grown out of the relation assumed towards complainant by Taussig & Co., as general agents of West, with reference to the carrying out of West's contract with complainant, between the years 1892 and 1898, and after that year from the fact that Taussig & Co. were the purchasers from West of the entire business mentioned in said contract. Undoubtedly, between 1892 and 1898, a course of dealing was established between the complainant and the defendants, but in that dealing, the defendants were acting as the general agents of West, in carrying out West's contract with Corbin, to furnish, as required, the articles mentioned in the contract, in receiving payment for the same, and in exercising such control over Corbin's business in Philadelphia, as might belong to a general agent to exercise over a subordinate agent. We are not able to discover from the evidence, that during this period anything took place between the parties, from which a personal contract between

Corbin and Taussig & Co. could be inferred as the foundation for the relief of specific performance and injunction, asked for in this suit. Indeed, as the suit is expressly founded upon the written contract between West and Corbin, such relief would seem to be thereby excluded. Any failure to do the things required of them, as general agents, was a failure of duty towards West, for which they were answerable to West alone, though, such failure might well make West answerable, if pursued in an appropriate suit, to Corbin. Defendants had a right to put an end to their employment as general agents by West, and their subsequent manufacture and sale of the articles mentioned in West's contract with Corbin, or of other articles of like kind, could not be complained of by Corbin, though it is conceivable that West might, under some circumstances, suffer actionable injury from their conduct. Besides, the defendants aver, and the testimony supports the averment, that since 1894 they have not manufactured or sold automatic disinfectors made by West, or under the patents issued to West, except to a very small extent, but in place thereof have manufactured and sold disinfectors under patents issued to themselves, and furnished the same to the complainant; said goods being marked so as to show that they were not manufactured under West's patents. They nevertheless did, and do, to some extent manufacture and sell Chloro-Naptholeum. In this state of things, the complainant seems to have acquiesced. From 1894 to 1898, the relation between Corbin and Taussig & Co. would seem to have been one of agency, with respect to the goods manufactured and sold to Corbin under Taussig's own patents and on his own account. That Taussig & Co. were not engaged in selling in Philadelphia the products of West, would seem to be confirmed by the master's report, that there were no profits to be accounted for by Taussig, under the decree to that effect.

Assuming, however, as the court below seems to assume, that Taussig & Co., upon the sale to them in 1898 by West, were in some way bound by West's agreement with Corbin, we still do not think the injunctive relief granted by the decree was warranted. Surely in this case complainant, Corbin, could be in no better position, as against Taussig & Co., than he would have been against West, with whom he contracted. The whole theory and purpose of the case, is to enforce a contract by which West, on certain conditions, was to give to Corbin the exclusive sale of his disinfectants within a certain territory, and the injunctive relief sought, is part of the process by which the obligation of West's contract to Corbin is sought to be enforced. If complainant is not entitled to a specific performance of the contract set up by him, he will not be entitled to an injunction which is only ancillary to the principal object of the bill. Allen v. Burke, 2 Md. Ch. 534; Gelston v. Myenberg & Sigmund, 27 Md. 345.

It is not in aid of a decree for specific performance, for in this case such a decree has been refused. In Pomeroy on Equity Jurisprudence, § 1341, the doctrine is thus stated:

"An injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific

performance. Both are governed by the same doctrines and rules; and it may be stated as a general proposition, that wherever the contract is one of a class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, for this is the only practical mode of enforcement which its terms permit."

It has long been a settled rule of equitable procedure, that specific performance of a contract will not be granted by the court (to whose judicial discretion the matter is always submitted), unless the remedy be mutual, or if the contract be otherwise unequal. On this ground, in a large class of cases, this remedy is denied, because, however possible specific performance may be of that side of the contract which is presented for enforcement, such remedy was not open to the defendant against the plaintiff. This remedy is denied by courts, where there is a contract of continuing personal service. As courts cannot practically and justly compel the performance of personal service, at the suit of the one to whom such service is due, so they will not, at the suit of the one from whom such service is due, enforce the other side of the contract, even though no practical difficulty presents itself to such enforcement. The reason of this rule applies, also, wherever under the contract one of the parties undertakes the performance of acts requiring intelligence and skill, and extending through a long period of time, and where the court could be compelled, in decreeing such performance, to exercise a continuous supervision of numerous individual acts and intricate details. It is impossible for courts to exercise efficiently and wisely such supervision, and in the case of such contracts, the remedy of specific performance is necessarily denied to either party thereto. Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955; Pul. Pal. Car Co. v. Tex. & Pac. R. R. (C. C.) 11 Fed. 625; Fry on Specific Performance, §§ 460, 461, 463.

West's contract with Corbin was at least a quasi contract of agency. The goods indeed were to be sold to Corbin, who was to pay for them as an ordinary purchaser, but they were to be exclusively sold to him, and to be furnished with promptness from time to time, as required, in consideration of which, Corbin on his part was to "exercise all reasonable efforts and energy to push the sale of the goods and to bring them before the public in their territory by personal solicitation, or by means of canvassers, and in return to pay promptly for all goods ordered as specified in bill of sale." This was clearly a contract on Corbin's part, to render a continuing personal service to West, for which he was to be paid by the privilege of an exclusive sale of West's goods. West was to furnish goods as stipulated in his contract indefinitely, so long as Corbin performed his part of the contract. Upon Corbin, however, there was no limitation as to the duration of the contract. He might terminate it at any moment, and at whatever resulting inconvenience to West. In this respect, the contract was clearly unequal. But more than that, it was incapable of being enforced against Corbin, for the reasons already stated. No decree of a court could enforce against Corbin the exercise of reasonable efforts and energy to push the sale of the goods, and to bring them before the public in his territory by personal solicitation, etc. A nonmutual remedy should not, therefore, in justice, be enforced against West.

The parties to the contract should, in such cases, be remitted to their remedy at law, which, in Corbin's Case, is not, in our opinion, inadequate.

It would seem, moreover, in the case before us, that the incapacity for compulsory performance attached to West's side of the contract, as it undeniably did to Corbin's. The contract was unequal, in that while West was bound indefinitely as long as Corbin performed his part of the contract, Corbin himself might, at his option, at any time refuse to carry it out. By a decree of specific performance against West, the court, too, might have to say, that he should continue to manufacture the articles against his will, or when he had retired from business, or when it ceased to be profitable to him, and it would have to determine whether the quality of any delivery was up to any standard, and if so, what standard. The implication of a covenant by West, not to sell in the prescribed territory during the continuance of the contract, is an integral part of the contract itself, not to be specifically enforced by injunction, where the contract as a whole is incapable of such enforcement. In such a situation as we have before said, adequate relief would be furnished by a suit at law for the injury, if any, sustained by Corbin in the premises. In Fed. Oil Co. v. West Oil Co., 121 Fed. 674, 57 C. C. A. 428, the Circuit Court of Appeals for the Seventh Circuit, clearly and concisely states the principles which we think are applicable to the case at bar, thus:

"The question then arises whether the specific performance of this contract should be enforced in equity. The principles by which courts of equity are guided in respect to the subject are well established. The right to specific performance is not absolute, but rests in judicial discretion—not an arbitrary, capricious discretion, but sound judicial discretion, controlled by established principles of equity, and exercised upon the consideration of all the circumstances of each particular case. The contract must possess certain elements, to demand of equity the exercise of its jurisdiction to enforce performance. It must be upon a valuable consideration. It must be mutual in its obligations and in its remedy. It must be perfectly fair, equal and just in its terms and in its circumstances, and the situation must be such that the remedy of specific performance will not be harsh or oppressive. The contract must be such that the court is able to make an efficient decree for its specific performance, and to enforce the decree when made. Pomeroy's Eq. § 1405."

But aside from what has been already said, we think the court below should have refused the prayers of complainant's bill, on the ground that the evidence disclosed in the record, does not show such a performance by Corbin of his part of the contract, as entitles him to pursue the other party thereto. The burden was not upon the defendant, to show want of performance on Corbin's part, but rather upon Corbin, to satisfy the court, by affirmative evidence, of the truth of his allegation of full performance. Aside from the testimony of Taussig, as to Corbin's lack of energy and reasonable effort in pushing the sale of West's goods in the territory conceded to him, there is the testimony of what was actually done in that regard by Corbin in the years 1892 to 1897, inclusive, and in 8 months of 1898. By this showing no substantial increase in the business had been accomplished by Corbin during this period of nearly seven years. It is also in evidence that he was engaged in other business, and did not devote reasonably sufficient

time to the work he had undertaken under his contract. On this ground, we think if the defendant, Taussig, is to be held, after his purchase of West's business in 1898, to the performance of West's contract with Corbin, that he was justified in terminating the same.

The injunction should have been refused by the court below, and the decree in the case of Corbin against Taussig & Co. must therefore, in that respect, be reversed. The case is remanded, therefore, with instructions to amend the decree in conformity with this opinion

In regard to the bill filed by the West Disinfecting Company, Incorporated, against Corbin, asking that he be restrained from doing business under the name of the "West Disinfecting Company," and also from selling or offering for sale any fluid under the name of "Chloro-Naptholeum," or under any name similar thereto or in imitation thereof, the learned judge of the court below has confirmed its opinion in the case of Corbin against Taussig & Co., that the right of the last-named firm to do business under the name of the "West Disinfecting Company" has been conclusively established, and that therefore the West Disinfecting Company, Incorporated, as assignee of Taussig & Co., is entitled to the injunction against Corbin, prayed for in the bill, restraining him from doing business under that name.

As to the question of unfair competition by Corbin, however, the learned judge of the court below says:

"The complaint that Corbin has been selling a disinfecting compound, which he calls chloro-naptholene, in imitation of and unfair competition with chloro-naptholeum, the fluid manufactured under the West patents, would require notice, except for the fact that he was authorized as we have seen to sell the latter, and was prevented from so doing by the refusal of Taussig & Co. and the West Disinfecting Company, as their successors, to supply him therewith. Under the circumstances, the attempt to retain his trade by furnishing his customers with something similar in character and name cannot be regarded as an unfair expedient so far as the complainants are concerned, whatever may be said of it with respect to those who dealt with him. But under the decree which will be made in his behalf, re-establishing his contract, the necessity for any such deception will be removed, and we may properly leave it there."

As we do not agree in the premises, we necessarily cannot agree in the conclusion at which the court has arrived. Corbin was not authorized by the contract to manufacture "Chloro-Naptholeum," much less can he be justified in selling a manufacture of his own under the name of "Naptholene," which is a palpable imitation, calculated to deceive those who wish to purchase "Naptholeum," even apart from the fact that Corbin used the name of the "West Disinfecting Company" in its sale.

In this case, also, we think the decree of the court below, in the respect here stated, should be reversed, and that an injunction should issue, as prayed for, restraining Corbin, not only from doing business under the name of "West Disinfecting Company," but also, from selling or offering for sale any fluid under the name of Chloro-Naptholeum," or any name similar thereto, such as "Naptholene."

The case is therefore remanded, with instructions to amend the decree in conformity with this opinion.