## F. W. REICHERT AND ANOTHER v. PURE OIL COMPANY AND ANOTHER.[1]

July 17, 1925.

Nos. 24,556, 24,557.

**Rules governing actions for specific performance and to restrain breach of contract the same.**

1. Actions to enjoin breach of a contract are similar to actions for specific performance and are governed by the same rules.

**Equity will not decree performance of contract which one party can terminate at will.**

2. A court of equity will not decree performance of a continuing contract which one of the parties can terminate at will, but will leave the parties to their remedy at law.

**Plaintiffs cannot maintain action for specific performance.**

3. Plaintiffs can terminate the contract in controversy at will and therefore cannot maintain an action to compel performance by defendant.

1. See Injunctions, 32 C. J. pp. 186, 187, § 281.
2. See Specific Performance, 36 Cyc. p. 632.
3. See Injunctions, 32 C. J. p. 195, § 297.

2. See note in 6 L. R. A. (N. S.) 391; 38 L. R. A. (N. S.) 451; 25 R. C. L. p. 227; 4 R. C. L. Supp. p. 1575.

Action in the district court for Goodhue county to restrain defendants from interfering with the sale and purchase of certain products and from selling such products in a designated territory except to plaintiffs. The case was tried before Johnson, J., who ordered judgment in favor of plaintiffs as stated in the sixth para-

[1] Reported in 204 N. W. 882.

graph of the opinion. Defendants took separate appeals from the judgment. Reversed.

*Fowler, Carlson, Furber & Johnson, Bartlett & Bartlett* and *George' E. Dyer,* for appellants.

*A. J. Rockne* and *Albert Mohn,* for respondents.

TAYLOR, C.

Plaintiffs are jobbers and distributors of petroleum products in the city of Red Wing and the territory tributary thereto. Since the year 1919 they have sold a line of such products known and advertised under the trade name of "Diamond" gasolene, kerosene and lubricating oils. The "Pure Oil Company," a corporation organized under the laws of South Dakota, was engaged in producing, refining and marketing petroleum products, and was the owner of a brand of gasolene known, advertised and sold under the trade name of "Energy" or "Energee" gasolene, and of a brand of motor oils known, advertised and sold under the trade name of "Puritan Motor Oils." In May, 1921, the defendant "The Pure Oil Company," a corporation organized under the laws of Ohio, took over the business of the "Pure Oil Company" and assumed its obligations. It is conceded that any rights which plaintiffs may have against either company may be enforced against the defendant "The Pure Oil Company;" and, for the purpose of this case, it is not necessary to distinguish the transactions with one company from those with the other.

"Diamond" gasolene is the common gasolene sold at service stations. "Energy" gasolene is a higher grade and is sold at three cents per gallon above the price of common. On August 27, 1920, plaintiffs and the Pure Oil Company entered into an oral contract under which plaintiffs began handling "Energy" gasolene and "Puritan Motor Oils" in addition to their "Diamond" brand. They operated under this contract until November 19, 1923, on which date defendant The Pure Oil Company refused to sell them any more of those products, and shortly thereafter made a contract with defendant Kingston giving him the exclusive right to sell such products

in the city of Red Wing and the territory naturally tributary thereto. Plaintiffs, claiming that under their contract they had the exclusive right to sell such products in that territory for a period of ten years, brought this action to enjoin defendants from interfering with the purchase and sale of such products by plaintiffs and from selling such products in that territory except to plaintiffs. The court made extended findings of fact, paragraph 5 and 6 of which are as follows:

"That on August 27, 1920, the plaintiffs made and entered into an agreement with said Pure Oil Company wherein and whereby in consideration of plaintiffs' purchasing and installing the necessary tanks and other equipment for handling said 'Energy' gasoline and 'Puritan Motor Oils' and advertising the same and in consideration of the mutual advantages to be derived therefrom by the parties it was stipulated and agreed by and between the plaintiffs and said Pure Oil Company that the plaintiffs should have and were given by said Pure Oil Company the exclusive right to purchase, handle, distribute and re-sell said 'Energy' gasoline and said 'Puritan Motor Oils' for the said Pure Oil Company in said Red Wing territory as long as plaintiffs remained in such petroleum business and so long as plaintiffs bought 'Energy' gasoline from said Pure Oil Company and sold no other gasoline under said brand, for a period of at least ten years, should plaintiffs remain in said business that long and would sell said products as aforesaid; that said Pure Oil Company agreed that it would not during said time directly or indirectly sell or dispose of said 'Energy' gasoline or 'Puritan Motor Oils' to any other person or persons in said Red Wing territory during said time; that plaintiffs agreed to purchase said 'Energy' gasoline from said Pure Oil Company, at the market price per gallon for such gasoline in tank car lots F. O. B. Refinery at date of shipment for which plaintiffs agreed to pay said Pure Oil Company such market price less 1 per cent discount in ten days from date of shipment and to purchase said 'Puritan Motor Oils' at its jobbers price date of shipment with the same discount, shipments thereof to be made from time to time as plaintiffs would re-sell and need the same; that

said Pure Oil Company agreed with the plaintiffs that it would not during said time directly or indirectly interfere with the plaintiffs' said business and would not compete with them in the sale of its said products; that plaintiffs were to have and were given the exclusive right to sell said Pure Oil Company's products in said territory during said time; that it was understood and agreed that nothing in said contract should be in any way construed to limit the right of plaintiffs to purchase their own 'Diamond' brand of gasoline, kerosene and lubricating oils from whomever they saw fit or to limit their right to sell and dispose of the same as they saw fit.

"That said 'Energy' gasoline and 'Puritan Motor Oils' was to be supplied, furnished and delivered by said Pure Oil Company to the plaintiffs from time to time as they might re-sell and need the same in their said business, and that every car-load shipment of 'Energy' gasoline and every consignment of 'Puritan Motor Oils' thereafter made by said Pure Oil Company or the defendant The Pure Oil Company was a part of said contract and made in performance thereof and constitute one transaction."

The court further found that in reliance upon the contract plaintiffs had expended several thousand dollars in providing storage tanks, service stations and other equipment for handling and selling "Energy" gasolene, and in advertising it. The court further found that plaintiffs had purchased "Energy" gasolene from defendant Pure Oil Company to the amount of $15,000 in each of the years 1921, 1922 and 1923, and had also purchased a considerable quantity of "Puritan Motor Oils" in each of those years.

The court found as conclusions of law that the defendants and each of them should be

"Perpetually restrained and enjoined from in any manner directly or indirectly interfering with plaintiffs' purchasing, handling and selling 'Energy' or 'Energee' gasoline and 'Puritan Motor Oils' and from directly or indirectly selling, disposing of or delivering said products to any person or persons, except the plaintiffs, in the City of Red Wing, Goodhue County, Minnesota, and retail trade terri-

tory naturally tributary thereto during the continuance of said contract."

Defendants made a motion for amended findings which was denied, and thereafter appealed from the judgment entered pursuant to and in accordance with the findings.

The findings of fact are amply sustained by the evidence, and the question is whether these findings justify the issuance of a mandatory injunction for the purpose of compelling specific performance of the contract by defendant The Pure Oil Company. The contract as stated by plaintiffs and found by the court gave plaintiffs the exclusive right to handle "Energy" gasolene and "Puritan Motor Oils" in the Red Wing territory

"As long as plaintiffs remained in such petroleum business and so long as plaintiffs bought 'Energy' gasoline from said Pure Oil Company and sold no other gasoline under said brand, for a period of at least ten years, should plaintiffs remain in said business that long and would sell said products as aforesaid."

Under the contract plaintiffs have the right to cease buying these products from defendant Pure Oil Company at any time they see fit and hence may terminate the contract at will.

An action to prevent the breach of a contract is, in effect, an action for specific performance and is governed by similar rules. The authorities, with little variation, hold that a court of equity will not enforce performance of a continuing contract if the contract permits the party seeking such enforcement to terminate it at will, but will leave him to his remedy at law. Brown v. Munger, 42 Minn. 482, 44 N. W. 519; Alworth v. Seymour, 42 Minn. 526, 44 N. W. 1030; Southern Express Co. v. Western N. C. R. Co. 99 U. S. 191, 25 L. ed. 319; Taussig v. Corbin, 73 C. C. A. 656, 142 F. 660; Hutchinson G. & F. Co. v. Wichita Nat. Gas Co. (C. C. A.) 267 F. 35; Federal Oil Co. v. Western Oil Co. (C. C.) 112 F. 373, affirmed, 121 F. 674, 57 C. C. A. 428; Rust v. Conrad, 47 Mich. 449, 11 N. W. 265, 41 Am. Rep. 720; Ulrey v. Keith, 237 Ill. 284, 86 N. E. 696; Watford O. & G. Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. 144;

Bartholomae & R. Brew. & Malt Co. v. Modzelewski, 269 Ill. 539, 109 N. E. 1058; Fowler Utilities Co. v. Gray, 168 Ind. 1, 79 N. E. 897, 7 L. R. A. (N. S.) 726, 120 Am. St. 344; Advance Oil Co. v. Hunt, 66 Ind. App. 228, 116 N. E. 340; Sturgis v. Galindo, 59 Cal. 28; Dabney v. Key, 57 Cal. App. 762, 207 Pac. 921; Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; Hill O. & G. Co. v. White, 53 Okla. 748, 157 Pac. 710; Geiger v. Green, 4 Gill. (Md.) 472; Solomon v. Wilmington Sewer. Co. 142 N. C. 439, 55 S. E. 300, 6 L. R. A. (N. S.) 391; Iron Age Pub. Co. v. W. U. Tel. Co. 83 Ala. 498, 3 South. 449, 3 Am. St. 758; Woodruff v. Woodruff, 44 N. J. Eq. 349, 16 Atl. 4, 1 L. R. A. 380; Richmond v. Dubuque & S. C. R. Co. 33 Iowa, 422, at 486.   See also Berry v. Frisbie, 120 Ky. 337, 86 S. W. 558, 27 Ky. L. 724; Lone Star Salt Co. v. Texas S. L. Ry. Co. 99 Tex. 434, 90 S. W. 863, 3 L. R. A. (N. S.) 828; Davie v. Lumberman's Min. Co. 93 Mich. 491, 53 N. W. 625, 24 L. R. A. 357.

In Southern Express Co.. v. Western N. C. R. Co. supra, the Supreme Court of the United States said:

"But we need not pursue the subject further, because there is one provision of the contract in this case which is fatal to the relief sought.   A court of equity never interferes where the power of revocation exists.   Frye, Specif. Perform. 64.   The contract stipulates that after the first year it shall cease upon the payment of the $20,000 and interest.   This might be made immediately upon the rendition of the decree.   The action of the court would thus become a nullity."

Taussig v. Corbin, supra, was much like the case at bar.   Corbin had a contract with one West giving him the exclusive right to sell certain goods in the city of Philadelphia and within a radius of 25 miles of that city so long as he performed the contract on his part.   After Corbin had operated under the contract for some years, the successor of West refused to sell him any more of the goods, and he brought an action to restrain a breach of the contract and also to enforce specific performance of it.   The court refused to grant either relief, for the reason that Corbin could not be compelled

to perform, saying that in such cases the parties should be remitted to their remedy at law.

In Watford O. & G. Co. v. Shipman, supra, the plaintiff had the right to terminate the contract at will. The court pointed out the distinction between such contracts and ordinary options, and said:

"While the power of revocation reserved in this lease has the effect of depriving appellant of equitable remedies in the nature of a specific performance, still the contract is not void for want of mutuality. The reservation of the right to cancel is not an infirmity which renders the contract void *ab initio*, but it deprives the party for whose benefit it is made, of relief in equity in the nature of a specific performance."

In Ulrey v. Keith, supra, the lessee had obtained a decree in the lower court enjoining a breach of the contract. The contract permitted him to surrender the lease on payment of one dollar. The court said:

"It is clear that on account of such provision a court of equity could not enforce specific performance of the lease at the instance of the lessor, and if the law as declared in this state is that where there is a lack of mutuality in remedy courts of equity will aid neither of the parties in the enforcement of the contract but will leave them to their remedy at law, then the decree in this case is erroneous."

After reviewing numerous cases and saying that it should be borne in mind, "that there is a distinction, in equity, between a mutuality in the obligation of contracts and a mutuality of remedy under them," the court reversed the decree.

In Fowler Utilities Co. v. Gray, supra, the appellee, Gray, sought to enjoin the violation of a contract to supply his building with hot water heat from a central plant. The necessary equipment had been installed and the heat furnished for a time under the contract. The trial court granted the injunction. The court said:

"It is admitted that the supply of hot water heat bargained for in the contract under consideration could be terminated at the will of

appellee, without liability for damages, and it must follow that its continuance was dependent upon the pleasure of both parties. The decree entered by the trial court may, for aught we know, have been virtually annulled before this time at the instance of appellee in the exercise of his discretion. The agreement relied upon, so far as it remains executory, is not binding for want of mutuality, and its performance cannot be enforced in equity at the suit of either party."

In Brown v. Munger, supra, this court said:

"The general rule, universally laid down, is that, to entitle either party to specific performance, there must be a mutuality of remedy as well as of obligation. * * * When, from the nature of the contract, it is not in the power of the court to compel a full and complete specific execution by both parties at the time coercion is demanded by one, the reason is obvious why specific performance should not be exacted on one side, and the contract left wholly or partly unperformed on the other. * * * Mutual enforcement of the contract must be practicable when specific performance is to be decreed. The court should then be able to enforce all of the terms of the contract at once, *in praesenti*; should have the power to superintend the performance of the conditions of the contract by each of the parties, and in all of its parts."

In Alworth v. Seymour, supra, this court said:

"Specific performance will not be decreed unless the court can at the time enforce the contract on both sides, so that the whole agreement will be carried into effect according to its terms."

The rule that a court of equity will not decree performance of a contract at the instance of a plaintiff who has the power to terminate it at will is not based on the ground that the contract is invalid for lack of consideration or want of mutuality of obligation, but on the ground that the court will not decree performance unless it can compel performance by both parties, and it cannot compel performance by the plaintiff as he could avoid the decree at any time by revoking the contract. Unless there is a mutuality

of remedy at the time coercion is sought so that the decree will bind both parties and accomplish a full performance of the contract, the court refuses to exert its equitable powers and leaves the parties to their remedy at law. Of course this rule applies only to continuing contracts, and not to ordinary options nor to contracts fully performed on the part of the plaintiff. Neither does it mean that the contract is invalid. As said by Judge Cooley in Rust v. Conrad, supra:

"Denying specific performance does not deny the legality or obligation of the contract: it denies merely that the case is one of equitable cognizance."

As the conclusion reached on this question is decisive of the case, it is not necessary to consider the other questions raised in the briefs.

Plaintiffs made a motion to strike the settled case. As the decision rests on the findings and the settled case contains nothing to impeach them, this motion raises only a moot question.

Judgment reversed.