(Decided 20th June, 1894.)

---

CANTON COMPANY OF BALTIMORE *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Specific performance—Contract to Purchase land—Title of Plaintiff—Defect of Title— Waiver of Defect—Possession by Defendant.*

In an action for the specific performance of a contract, it appeared that the plaintiff, who owned land fronting on the water and extending to the Port Warden's line, after granting to a copper smelting company, its successors and assigns, the use and privilege in common with others, of a certain avenue part of this land, in so far as the same is or shall be a public highway, agreed to sell to the defendant, a railroad company, the land, and also the bed of the avenue if it were able to deliver it. The City of Baltimore, by ordinance, conceded to the railroad company the privilege of using the avenue for the purposes of its business, and the company entered upon and took possession

Canton Co. *vs.* Balto. & Ohio Railroad Co.

of the property, and continued to use it for all the purposes of its business, to the entire exclusion of the plaintiff. It laid numerous tracks upon it, over which passenger and freight trains were run, and a portion of the property was used as a freight depot. It constructed an expensive and permanent bulkhead into the water, filled in the land, built one leg of its ferry slip out into the water from its front, and expended large sums of money in making it suitable for its extensive traffic, in connection with a particular part of its system. The plaintiff observing these improvements notified the defendant by letter that such things were not contemplated by the terms of the agreement, unless the company became the purchaser of the bed of the avenue, and stated that the company was a trespasser to that extent, and required it to remove the obstructions forthwith. No attention was paid to this letter. The defendant had been in possession for eight years. HELD:

That the defendant, having entered upon the property, and taken possession of it, and committed such acts of ownership as could be referred only to an entry and possession under the contract, such entry and possession constituted a waiver of the condition, and were conclusive that it had elected to become the purchaser, whatever might be the condition of the title, and it could be compelled to perform specifically the contract.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from the decree of the Court below (DENNIS, J.) dismissing the bill of complaint, without prejudice to the right of the plaintiff to proceed at law. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, MCSHERRY and BOYD, J.

*William S. Thomas,* and *Charles Marshall,* for the appellant.

*W. Irvine Cross,* (with whom was *John K. Cowen,* on the brief,) for the appellee.

PAGE, J., delivered the opinion of the Court.

On the 24th of November, 1884, the Baltimore and Ohio Railroad Company entered into an agreement with the Canton Company of Baltimore, by which the latter "agreed to sell and convey unto the Baltimore and Ohio Railroad Company the following described properties, situated and lying in the city of Baltimore, and in Baltimore county, adjacent thereto in the State of Maryland," and then, having described the first parcel, the same being at the northwest corner of Clinton street and Third avenue, and binding two hundred and nine feet on the west side of Clinton street, with a depth of about seven hundred and eighty feet to the old Port Warden's line, the contract proceeds: "It is further agreed that in the event of the Canton Company of Baltimore *being able to deliver* the bed of Third avenue seventy feet wide, and same depth as the lot hereinbefore described, that the party of the second part (the Baltimore and Ohio Railroad Company) are to purchase at the same price, viz., six hundred dollars per front foot, in fee, payable on the same terms as for lot. The Canton Company of Baltimore reserving the right, *in the event* of the sale of Third avenue, to retain ten or twenty feet on Clinton street, on the northerly side of first above described lot, with an even width to Port Warden's line, adjoining the forty-foot street before mentioned, making the pro rata reduction as to price." At the time of the making of this agreement, Third avenue was a vacant lot in the possession and control of the Canton Company. It yielded to that company a revenue (the amount of which cannot be satisfactorily determined from the record) from wharfage, from charges upon vessels lying in the waters in front of the property, and from certain privileges to the Copper Company in dropping its slag. In 1854, thirty years before, the Canton Company had executed a lease, and subsequently a deed, conveying the reversion to the Baltimore Copper Smelting Company for property lying south of and

abutting on Third avenue. In the lease, after a call is made for a line "binding on the southern side of Third avenue," there occurs the following expression, viz.: "The said ground calls for Third and Fourth avenues, being for those avenues as now designated on the map of the Canton Company's land, and the foregoing description being intended by the parties hereto to be conformable with said plat. * * * The Canton Company of Baltimore granting to the said Baltimore Copper Smelting Company, its successors and assigns, the use and privilege, in common with others, of the said Third and Fourth avenues, in so far as the same are or shall be public highways, but *not inclusive* of *any wharf* or *wharves* at the western extremity thereof." It is contended by the appellee that by reason of these provisions, taken in connection with the use which it is shown the public have made of the street, there has been an effective dedication of Third avenue as a public highway. However this may be, it is quite clear that certain rights of user, as a mode of ingress and egress to and from their property, were conferred upon the Copper Company; and it is equally clear, that, subject to these rights and to such other, if any, as belonged under the grant to the public, the Canton Company still retained the fee in the bed of the street, and remained the absolute owner of the riparian right. The latter was in itself a valuable interest. It carried with it the exclusive privilege of improving out in the water in front of the lot to the Port Warden's line, and this is a property of which the owner can only be deprived in accordance with the law of the land. *Balto. & Ohio R. R. Co. vs. Chase et al.*, 43 *Md.*, 35.

It was shortly after the making of this agreement that the Baltimore and Ohio Railroad Company entered upon and took possession of the property, and ever since has used it for all the purposes of its business, to the entire exclusion of the appellant. It has laid numerous tracks upon it, over which passenger and freight trains are run, and a

portion of the property is used as a freight depot; it has constructed an expensive and permanent bulkhead into the water, filled in the land, built one leg of its ferry slip out into the water from its front, and has expended large sums of money in adapting it and making it suitable and convenient for its extensive traffic, in connection with the Philadelphia division of its system. In December of 1885, Mr. Brooks, the president of the Canton Company, observing these improvements and changes going on, wrote to Mr. Garrett, the then president of the Railroad Company, calling his attention to the fact that such "things" were not "contemplated in any conversation or by the terms of the agreement," unless the railroad became the purchaser of the bed of Third avenue, and stated that that company was a trespasser to that extent, and notified him to remove the obstructions forthwith. On the 29th of June, 1891, Mr. Brooks wrote to Mr. Mayer, who had become the president of the Railroad Company, in which he referred to his letter to Mr. Garrett, and asked that that company should "purchase said portion of Third avenue and the water-front pertaining." And, again, in July, 1892, in a letter to the same gentleman, Mr. Brooks notified the Railroad Company, that as that company "has not paid for the bed of Third avenue as contemplated by the agreement," suit would be brought against the company for "compensation and damages." No attention having been paid to this letter, the Canton Company, in the November following, filed its bill for a specific performance of the contract.

The answer of the appellee asserts that the contract provides only that the land shall be purchased by it in the event of the Canton Company being able to deliver, and that it has not, and never has had, the ability to do this by reason of the property being subject to the rights of other parties.

It was contended at the argument that the contract as to Third avenue could not be enforced, because it lacked

the element of mutuality. Now, it is a general rule, that to enable either party to compel a specific performance, "the contract must be mutually binding on each." *Geiger vs. Green,* 4 *Gill,* 476; *Billingslea, Ex'r of Green, et al. vs. Ward,* 33 *Md.,* 48. If, therefore, a person sells that which he has not the power to convey, he cannot compel a purchaser to perform by taking less than he contracted to receive. *Bryant vs. Wilson & Hunting,* 71 *Md.,* 443.

The contract in this case was a conditional one. The Railroad Company were not to purchase, except in the event of the Canton Company being able to deliver. It is said in *Spear vs. Orendorf,* 26 *Md.,* 43, that "mutuality of a contract means an obligation on each to do, or permit to be done, something in consideration of the act or promise of the other. It does not imply that every stipulation is absolute and unqualified." Here the exact situation of the title was known to both parties, not only at the time the contract was made, but when the Railroad Company entered into the possession of the property. Indeed, the agreement was made with the particular claims of the public and of the Copper Company, especially in view. The Canton Company was expected to put itself in a position to deliver, and, when this was done, the Railroad Company was to purchase. If the condition thus resting upon the Canton Company has been performed, or if (as will be shown later on) its performance has been actually or constructively waived by the Railroad Company, "the contract becomes absolute, and rests on the same footing for all purposes as if it had been originally made positively, and without reference to any contingency." *Fry on Specific Perform.,* sec. 962; *Dilly and Heckrotte vs. Barnard,* 8 *Gill & J.,* 187.

When an agreement shows that the vendor has not, at the time, a clear and unencumbered title, but is to acquire it, and then convey, if he is able to give a clear title at the time when by the equities of the particular case he is

required to execute the conveyance in order to entitle him-self to the consideration, there will "be no obstacle to a specific enforcement of the vendor." This, we think, can be sustained both on principle and authority. In *Wylson vs. Dunn*, 34 *Chancery Div.*, 578, it was agreed that if the plaintiff should buy a field of three acres, the defendant would purchase half an acre. Subsequently, the plaintiff did buy the three acres, but the defendant attempted to withdraw from the contract. On a bill for specific per-formance it was held that the doctrine of non-mutuality did not apply, the contract having been made at a time when, to the knowledge of both, it could not be enforced until the occurrence of a contingent event, and that though the defendant could have withdrawn at any time before the plaintiff first became able to perform his part, she could not withdraw afterwards. The learned Judge in de-livering his opinion said: "But there arises the question whether this power of avoidance for non-mutuality is ap-plicable to the case where non-mutuality is apparent in the first instance, and is an essential part of the bargain. As I read this contract, Messrs. Wylson & Long go to Mrs Dunn and say, 'We have not got this land; you know it belongs to Mr. Hallington, but, if you will agree to buy from us half an acre for £350, we will purchase the whole.' That, from the first is a case of non-mutuality, and the contract could not be enforced on either side. Until Messrs. Wylson & Long have obtained that which they have agreed to sell, they cannot enforce it on Mrs. Dunn any more than Mrs. Dunn can compel them to convey that which they have not got. But the doctrine of non-mutuality—the doctrine that a purchaser may avoid a contract when he discovers that his vendor has not got that which he contracted to sell—seems to me altogether inapplicable when the vendor in the first instance tells the purchaser, and the purchaser knows from all the circumstances of the case, that the ven-dor has no title, and is not likely to have one for some

time." *Corson vs. Mulvany,* 49 *Penna. Rep.,* 98 ; *Yerkes vs. Richards,* 26 *At. Rep.,* 221 (153 *Penna. St.,* 646) ; *Smith and Fleek's Appeal,* 69 *Pa. St.,* 474; *Dressel vs. Jordan,* 104 *Mass.,* 407 ; 1 *Story's Eq. Juris., sec.* 793 ; *Pomeroy on Spec. Perf., sec.* 341.

This being the nature of the contract, the question is presented whether the Canton Company is in a position to maintain this proceeding. It appears from the testimony that in the spring of 1885 an ordinance of the Mayor and City Council of Baltimore was passed conceding to the Railroad Company the privilege of using Third avenue for the purposes of its business, and, further, that the Copper Company has acquiesced in the uses which the Baltimore and Ohio Railroad have already made of the property. It is contended that these concessions have removed all reasonable objections to the vendor's defect of title, because the Railroad Company have thereby been relieved of all obstructions to the full enjoyment of the bed of Third avenue. In the view we have of the case, however, it is not necessary for us to pass upon this point.

It may be considered as settled, that one who enters and continues in possession of property under a contract of sale, cannot be allowed, whilst affirming the contract, to repudiate it by refusing to pay the purchase money. *Bumpus vs. Platner,* 1 *John. Ch.,* 219 ; *Van Bibber vs. Reese,* 71 *Md.,* 620 ; *Williams vs. Mayor, &c., of Annapolis,* 6 *Harris & J.,* 534, 535. " A purchaser originally entitled to examine the vendor's title may subsequently waive that right, either expressly or by implication." If after the defect in the title is known, he continue in possession committing acts of ownership, it will be held there has been a waiver of objections. *Fry on Specific Perform., secs.* 1302 *to* 1314, *and authorities there cited;* *Jenkins vs. Hiles,* 6 *Ves.,* 655; *Fordyce vs. Ford,* 4 *Bro. C. C.,* 494; 2 *Sugden on Vendors,* 343, *et seq.* And under these circumstances the purchaser will not be

permitted to show the outstanding title to defeat the payment of the purchase money. *Fludyer vs. Cocker*, 12 *Ves. Jr.*, 25; *Fleetwood vs. Green*, 15 *Ves. Jr.*, 594; *Murrell vs. Goodyear*, 1 *De Gex, Fish. & J.*, 432.

Here, the Baltimore and Ohio Railroad Company, shortly after the making of the contract, entered upon the property, and has used it continuously ever since, in the manner and to the extent as has already been stated. Its entry must be regarded as under and in consequence of the contract. Not to do so would be to attribute to it the attitude of a trespasser, deliberately maintained now for nearly ten years. Neither the Mayor and City Council nor the Copper Works could confer upon it such dominion over the property as it has during all this period freely exercised. It is not contended that either of these parties held more than easements to pass over the avenue; yet the acts of the Railroad Company have been those of an absolute owner. If it be conceded that there had been an effective dedication of the street to the uses of the public, and that the Baltimore and Ohio Railroad received by the ordinance of the Mayor and City Council of Baltimore, every right which was in the public by the dedication, yet it remains that when the tracks were laid in the bed of Third avenue, a new burden was imposed on the property over and beyond that to which it was subjected by the dedication. The use, therefore, of the street for the purposes of a steam railway by the digging up and filling in of the soil, and the placing of tracks and station on it, was an interference with the rights of the Canton Company as the owner of the fee (*Phipps vs. Western Maryland Railroad Co. et al.*, 66 *Md.*, 319; *Thomas vs. Ford*, 63 *Md.*, 355), for which, had there been no contract, the Canton Company would have been entitled to be compensated. The possession and use of the riparian right was an appropriation of property, for which the Railroad Company can assign no possible authority, except such as it derived under the contract. As

was said in *Waters vs. Travis*, 9 *Johns.*, 467, under these circumstances "it would be absurd to suppose that it was tolerated to live on the land for such a length of time as a trespasser." We may add that we are of the opinion that the letters of the President of the Canton Company to the President of the Baltimore and Ohio Company show that neither party regarded the occupancy of the latter company as that of a trespasser. In 1885, Mr. Brooks notified the president of the latter company that he regarded the acts of that company as those of a trespasser, unless it completed the purchase according to the contract, and again in 1891 and in 1892 addressed similar communications to Mr. Mayer. No reply was made to these letters. Under these and all other circumstances of the case, we are clearly of the opinion that the acts of the Railroad Company in and upon this property, were acts of ownership, and as such amount, in contemplation of law, to a declaration that it considered itself the owner of the property. They, therefore, "constitute an acceptance of the title, which it cannot now be permitted to dispute, by showing that it did not intend them to be more than the acts of a trespasser." *Bown vs. Stenson*, 24 *Beavans*, 636; 1 *Story's Eq. sec.* 769 *a.* The contract in this case contains no provision under which the Railroad Company could hold possession of the property pending the completion of the title. In fact, as against the Canton Company the Railroad Company could acquire no rightful possession except upon the latter becoming a purchaser. The condition upon which the Railroad Company is to purchase is that the Canton Company shall be able to deliver. This condition is one, however, that the Railroad Company can waive (see cases cited *supra*); and we hold that, having entered upon the property, and taken possession of it, and committed such acts of ownership, as can be referable only to an entry and possession under the contract, such entry and possession

constitute a waiver of the condition, and are conclusive that it has elected to become the purchaser, whatever may be the condition of the title.

It follows from what we have said, the decree must be reversed, and the cause remanded for a decree for a specific performance of the contract; and inasmuch as the appellee has continued in possession of the property, interest must be paid from the date at which such possession began.

> *Decree reversed, and cause remanded for a decree in accordance with the opinion of the Court.*

(Decided 21st June, 1894.)