Russell Hardware and Implement Manufacturing Company, Respondent, *v.* Utica Drop Forge and Tool Company, Appellant.

Equity — powers of courts of equity — action for specific performance — when court may grant judgment rescinding contract, under prayer for relief.

It is the practice of courts of equity, when they have once obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand and to bring such relief down to the close of the litigation between the parties. When a trial court has gained jurisdiction of a cause for one purpose, it is justified in retaining it generally and decreeing the relief which will close the controversy in all of its apparent features at the time of the submission.

Plaintiff brought an action in equity, alleging failure on the part of defendant to perform a contract with reference to certain patents, stating that defendant was endeavoring to cheat and defraud it and asking relief by way of an accounting and that defendant be restrained from violating the contract. Defendant by its answer demanded an affirmative judgment annulling the contract. During the pendency of the action defendant's acts amounted to a repudiation of the agreement. The trial court found that the contract should be rescinded and all rights and privileges of the defendant thereunder cut off and terminated, and its right to use said patents revoked and canceled. *Held,* though relief by way of rescission was not demanded, such relief was quite consistent with the case as stated in the complaint and, under the prayer for such other relief as to the court might seem just, the subsequent acts of the defendant made the more stringent relief of an annulment of the contract proper, as well as the only just remedy to be applied.

*Russell H. & I. Mfg. Co.* v. *Utica D. F. & T. Co.,* 122 App. Div. 899, affirmed.

(Argued February 25, 1909; decided March 16, 1909.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 10, 1907, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The plaintiff, as the owner of certain patents, through assignments from the patentees, brought this action to enforce

compliance with, and to protect its rights under, a contract; by which it had granted to the defendant the sole and exclusive right to manufacture and to sell the patented articles. The letters patent covered a device in staple pullers and wire splicers, known to the trade as the "Russell Staple Puller and Wire Splicer". The contract, so far as it is material to be described, licensed the defendant to manufacture and to sell the patented article " according to said invention and patent " in the United States and elsewhere. Each party agreed to endeavor to detect and to prevent infringement. The defendant was to have its plant in full operation to supply the trade by January, 1901, and, when it was in a position to do so, the plaintiff's plant was to cease operations and the entire business was to be taken over by the defendant. Royalties were agreed to be paid upon sales by the defendant at a certain fixed rate and statements of all sales were to be furnished to the plaintiff, monthly. In default of their payment, or upon failure to manufacture according to the terms of the contract, the privileges granted were to become void, upon the plaintiff giving six months' notice in writing.

The complaint set forth the contract; averred performance by the plaintiff of its agreements; alleged the failure by the defendant to perform the contract and stated various acts of the defendant, through which it was endeavoring to cheat and defraud the plaintiff and to jeopardize its rights under the contract and under the patents. Judgment was prayed for a full statement of the sales made; for the amount of money due according thereto and that the defendant be permanently restrained from violating the contract, or from manufacturing, advertising and selling a staple puller otherwise than as the "Russell Staple Puller", or from making and selling any staple puller in competition with the same during the life of the contract, and for such other and further relief, as to the court might seem just. The plaintiff was awarded judgment at the Special Term for the recovery of the royalties owing and for the damages sustained. The judgment, further, rescinded the contract, canceled the right of the defendant to

use the patents and restrained the defendant from further exercising any of the rights in the business, trade and good will of the Russell staple puller. The Appellate Division of the Supreme Court, by the unanimous vote of the justices, affirmed the judgment so recovered. The facts, upon which the judgment was awarded, were fully stated in the findings made by the trial court. From them it is made to appear that, after the making of the contract, the defendant commenced operations in April, 1901, and took over the whole business theretofore carried on by the plaintiff in the manufacture and sale of the tool. The plaintiff sold its plant and, wholly, discontinued business. It transferred to defendant another patented device for a similar staple puller, which it had purchased, subsequently to the making of the contract, and, later, joined with the defendant in contracting with two other parties, who were manufacturing a similar article, for a settlement of controversies upon claims of infringement and for a basis of prices for their several manufactures. The benefit of these agreements was received by the defendant, in securing the control of the trade for the marketing of the article covered by the plaintiff's patents. The defendant, in manufacturing the tools, stamped upon them the dates of the patents. In December, 1903, an officer of the plaintiff discovered that false reports were being made as to sales and that the whole amount of the royalties due under the contract had not been paid. From December, 1903, the defendant ceased to render any statements to the plaintiff and to pay royalties. After March, 1904, it omitted to stamp the tool with the dates of the patents and advertised it as the "Utica Improved Staple Puller." After November 1st, 1904, the defendant introduced to the trade a combination tool and called it the "Black Bull"; which was identical in device with the Russell staple puller. It was introduced to the trade by the same circular, which had been used in advertising the Russell tool. After April, 1905, the Russell staple puller, under its true name, was not furnished to the trade, but was supplied under the name of the "Black Bull". It

was found that this course was pursued "with the intent of evading liability for royalties and of substituting a tool, containing the same devices for pulling staples, in the market for the Russell, under another name, and with the intent  * * * of driving said tool, under its true name, from the markets and cutting off the demand for the same."

In December, 1903, the officer of the plaintiff, who had discovered the fraud in the defendant's reports, had undertaken, pursuant to a provision of the contract, by notice, to terminate the contract six months from date. It is found that his act was not authorized, nor ratified, by the plaintiff and that the defendant neither acquiesced in, nor complied with, the notice. After, further, finding that the defendant had violated and repudiated the contract, and had impaired the value of plaintiff's property in its patents and in the business and trade of the Russell staple puller, the trial court stated various conclusions of law leading to the direction for the judgment. It was held that plaintiff was entitled to judgment restraining the defendant from using the devices for staple pulling contained in the Russell and Heard patents; but, as the defendant "had been using said devices in a staple puller with another name, continuously since April, 1905, without giving credit to said patents, such an injunction now would be practically barren of benefits to plaintiff, and, as it seems best to rescind said contract," that said contract should be "rescinded and all rights and privileges of defendant thereunder cut off and terminated, and its right to use said patents revoked and cancelled," and that the defendant "should be restrained and enjoined from further exercise of any of the rights in the business, trade and good will of the Russell staple puller," etc. The plaintiff's action was commenced in June, 1904, upon the discovery of the false statements and prior to the defendant's other acts in repudiation of the plaintiff's rights.

*Richard R. Martin* for appellant. The rescission of the contract between the parties which was decreed in the judg-

ment was not warranted under the complaint, and was error for which the judgment should be reversed. (*MacArdell* v. *Olcott*, 189 N. Y. 368; *Sanger* v. *Wood*, 3 Johns. Ch. 416; *Walker* v. *Millard*, 29 N. Y. 375; *Cobb* v. *Hatfield*, 46 N. Y. 533; *Outcault* v. *Bonheur*, 120 App. Div. 168; *W. & M. Mfg. Co.* v. *C. B. W. F. Co.*, 42 Fed. Rep. 675; *Conrow* v. *Little*, 115 N. Y. 387; *White* v. *Lee*, 3 Fed. Rep. 222.) The recovery of royalties by plaintiff accrued down to the date of the decision, as decreed in the judgment, was inconsistent with the provision in the judgment for a rescission of the contract in suit. (*Small* v. *H. M. Co.*, 2 N. Y. 330; *Woodworth* v. *Cook*, 2 Blatchf. 151; *City of Buffalo* v. *Dudley*, 14 N. Y. 336; *Matter of Garver*, 176 N. Y. 386; *S. D. Mfg. Co.* v. *N. T. Co.*, 95 Fed. Rep. 291; *Brusie* v. *Peck*, 135 N. Y. 622.) The conclusion of the trial court that plaintiff was entitled to an injunction, if justified, furnished no ground for the rescission of the contract decreed in the judgment, and the conclusion was in itself unwarranted under the complaint or upon the evidence. (*McHenry* v. *Jewett*, 90 N. Y. 58; *Nellis* v. *Pennock Mfg. Co.*, 13 Fed. Rep. 451; *Pickhardt* v. *Packard*, 22 Fed. Rep. 530; *J. R. S. Co.* v. *U. S. & S. Co.*, 59 Fed. Rep. 20; Robinson on Patents, § 763; *Storr* v. *C. B. Co.*, 55 Misc. Rep. 398; *C. S. S. Co.* v. *Clark*, 100 N. Y. 365; *H. S. Mfg. Co.* v. *Reinoehl*, 102 N. Y. 167; *Denise* v. *Swett*, 142 N. Y. 602; *Henderson* v. *Dougherty*, 95 App. Div. 346; *Smith* v. *S., etc., Co.*, 19 Fed. Rep. 825.)

*Charles H. Searle* for respondent. The trial court committed no error in directing judgment for a cancellation of the contract because of defendant's violations of the same. (*Hyatt* v. *Ingalls*, 124 N. Y. 93; *Mott* v. *Oppenheimer*, 135 N. Y. 312; *Pond* v. *Harwood*, 139 N. Y. 111, 120; *Sherman* v. *Foster*, 158 N. Y. 587; *Hahl* v. *Sugo*, 169 N. Y. 109; *McGean* v. *M. El. R. Co.*, 133 N. Y. 9; *Valentine* v. *Richardt*, 126 N. Y. 272; *Benedict* v. *Benedict*, 85 N. Y. 625; *Murtha* v. *Curley*, 90 N. Y. 372, 377; *Barlow* v.

*Scott,* 24 N. Y. 40; *T. R. H. T. C. Co.* v. *Doyle,* 133 N. Y. 603.) It was not error to direct judgment for the royalties on all sales down to the date of the rescission. (*U. M. Co.* v. *Lounsbury,* 41 N. Y. 363; *Hyatt* v. *Ingalls,* 124 N. Y. 93.)

GRAY, J. The proposition argued by the appellant is that the rescission of the contract was not warranted by the complaint and that the relief awarded by the decree was upon a theory inconsistent with that of the cause of action stated. There would be some force in the argument that the plaintiff should be held to the remedy, which he had elected to pursue, if, upon reaching the trial of the issues, the situation had not been changed by the conduct of the defendant, from what it was when the complaint was framed and served. It stated a cause of action for equitable relief, based upon violations of the contract between the parties, in that it was sought to enforce the agreements of the defendant by a judgment, which should prevent the continuance of the wrongful acts conplained of. A recovery of the royalties due was incidental to an award of the principal relief by way of injunction. At the time, according to the findings, and we are concluded, of course, by the facts as found below, the situation was that the defendant had made false reports of sales; that it ceased to make any reports; that it was selling the patented tool under a different name and without stamping upon it the dates of the patents. There had been no repudiation as yet; for in January, or February, 1904, but a few months before the suit was brought, the defendant, as controlling the plaintiff's patent rights, was agreeing with a third party for a settlement of a claim of infringement and for the future maintenance of prices on their several manufactures. The evidence upon this last trial showed that, since the commencement of the action, the defendant's acts had become aggressive as to the plaintiff's interests and amounted to a repudiation of the agreements in its contract. The defendant, availing itself of the business in staple pullers, which had been created through the exercise of its rights as

licensee under the contract, ceased supplying the contract article under its own name and patent marks, when the supply on hand was exhausted, and supplied the demand of the trade by furnishing an instrument of identical device under a different name. In doing so it made use of the trade circulars, under which the contract article had been advertised. It was found to have been endeavoring to evade its agreement to pay royalties to the plaintiff. Indeed, in its answer the defendant's repudiation of the contract is plain, when it demands an affirmative judgment annulling the contract for invalidity of the patents. It was quite within the discretion of the court, therefore, having acquired jurisdiction of the parties and of the subject-matter of the action, to grant relief according to the exigencies of the case. Differing from the rule in actions on the law side of the court, which limits the judgment to the facts as they existed at the commencement of the action, when the action is in equity, relief will be administered as the nature of the case and the facts, as they exist at the close of the litigation, demand. As it was said in the opinion in *Madison Avenue Baptist Church* v. *Oliver Street Baptist Church*, (73 N. Y. 82, 95), it is the practice of courts of equity, "when they have once obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties." (*Lynch* v. *Metropolitan Elev. Ry.* 129 N. Y. 274, 280; *Pond* v. *Harwood*, 139 ib. 111, 120; *Mott* v. *Oppenheimer*, 135 ib. 312, 316; *Sherman* v. *Foster*, 158 ib. 587, 593.) The relief asked by the plaintiff, upon commencing the action, was obviously inadequate, when it was shown to the court that the defendant had, not merely, continued in the violations of the contract complained of, but had gone further in its wrongful acts and had seriously endangered the plaintiff's rights in the advantages to be derived from its ownership of the patents. It was what the defendant had done after the commencement of the action, which seemed to the trial court to make the injunction prayed for of no value. The

only adequate relief, under the circumstances as they were disclosed by the proofs, was to terminate the contract and, thus, to cancel all rights to manufacture under the patents. The prayer for relief was no part of the plaintiff's cause of action. That was, as stated in the complaint, the violation of the defendant's agreements in the contract, in ways described, and a refusal to perform the obligations assumed. Though relief by way of rescission was not demanded, such relief was quite consistent with the case as stated in the complaint and, under the prayer for such other relief as to the court might seem just, the subsequent acts of the defendant made the more stringent relief of an annulment of the contract proper, as well as the only just remedy to be applied. The rescission decreed by the court below was within that head of equity jurisprudence, which is concerned with forfeiture and cancellation, and it is defined by the decree as meaning the termination of all rights under the contract. It was granted to prevent the injury, which was impending over the plaintiff from the acts of the defendant, and it was necessary, in order to prevent a failure of justice. In *Mott* v. *Oppenheimer*, (*supra*), where the issue was as to the plaintiff's right to an injunction, restraining the defendant from using a party wall, the court refused to grant an injunction and, instead, charged the latter's premises with a lien for the payment of the value of one-half the wall. In answer to the argument of the defendant, that it was not competent to grant such relief, in view of the issue tendered, it was said that " with all the facts before the court upon a demand for its equitable intervention, it had jurisdiction to administer such equitable remedies as the merits of the case justified." (P. 316.) The trial court, having gained jurisdiction of the cause before it for one purpose, was justified in retaining it generally and in decreeing that relief which would close the controversy in all of its apparent features, at the time of the submission. (*Lynch* v. *Metropolitan Elev. Ry. supra.*)

The argument of the appellant, that the recovery of royalties down to the time of the decision was improper, in view

of a rescission being decreed, is untenable. The defendant had no right to manufacture and sell the patented device without paying to the plaintiff the stipulated compensation. It could not continue to sell the article, without rendering itself liable for the consequences under its covenant. (See *Hyatt* v. *Ingalls,* 124 N. Y. 93, and *Union M'f'g Co.* v. *Lounsbury,* 41 ib. 363.) The defendant did not surrender its license, nor did it offer to the plaintiff to do so, and it cannot be heard to complain, if the trial court determined its liability by way of royalties, up to the close of the litigation. That phase of the relief granted was quite within the jurisdiction of the court as incidental to the main relief awarded.

I advise the affirmance of the judgment.

Cullen, Ch. J., Edward T. Bartlett, Haight, Vann, Willard Bartlett and Chase, JJ., concur.

Judgment affirmed, with costs.