VALENTINE SCHULTZ, Plaintiff, *v.* JOHN BUSENDORF, Defendant.

(Supreme Court, Erie County, December, 1921.)

Vendor and purchaser — right of way — real property — contracts — equity — reformation of instrument — agreement "subject to all leases" held to include right of way for pipe line for oil or gas — vendee's sale of personal property waived alleged defect in title to realty — estoppel — specific performance — equity will reform contract though not requested in pleading.

Where from surrounding facts and circumstances the intent of the parties to a written contract, in their mistaken use of a particular word is plain, parol evidence is admissible to show its intended meaning and its precise and technical meaning cannot be insisted upon.

Where a written contract fails to express the real agreement of the parties, the court in the exercise of its equity powers, upon a proper case made, is in duty bound to reform the con-

tract even though in an action thereon the defendant by his answer has not asked for a reformation.

A contract for the purchase of a farm lying in part on both sides of a highway, and also certain personal property, in express terms provided that, " The above described property is being sold subject to all leases against the property with the Iroquois Natural Gas Co." After the intending purchaser had entered into possession there was delay in closing the deal but finally the title was rejected on the alleged ground that a certain right-of-way owned by a company, to lay, maintain and operate a pipe line for the transportation of oil or gas over the farm, rendered the title bad. In an action to recover the amount paid on the contract when it was made, and also to recover certain amounts claimed to have been expended on the property in excess of those received for produce sold, the answer put in issue certain of the allegations of the complaint and prayed for a specific performance of the contract. It was established on the trial that plaintiff knew of the pipe line, made no objection to it and, in connection with the statement that he had paid too much for the farm, said to defendant's attorney, referring to the well and line, which gave his house a full supply of gas, that those were the only things that made him buy the farm. *Held,* that the word " leases " in the contract which was drawn by one not a lawyer, was intended to describe the very right-of-way to which objection was made; otherwise the word, which in itself was a misnomer, would be meaningless.

The action of plaintiff, who still is in possession of the farm, in selling a considerable portion of the personal property on the place, which he had no right to do until payment of the purchase price according to the terms of the contract, was a waiver of the alleged defect in the title, and he cannot be heard to insist upon the objection now.

Judgment for the reformation of the contract and for the specific performance of the same as reformed.

ACTION for damages for alleged breach of contract for sale of real estate.

James A. Magoffin, for plaintiff.

Albert L. Stratmeier and Fred J. Blackmon, for defendant.

WHEELER, J. Busendorf, the defendant, was the owner of a farm of some forty acres, thirty of which laid on one side of a highway and ten on the opposite side. The farm was for sale. The plaintiff came to this farm, made an observation of the place, and on the next day came again and after a further observation and examination, verbally agreed to buy the thirty acres, and paid $50 down. Subsequently, he wished to acquire the ten additional acres, and agreed to purchase the entire property for $14,000. This price included the personal property on the farm, saving and excepting certain specified things which the defendant was to retain.

The plaintiff at once moved upon and took possession of the farm. He expressed a wish, however, to have the contract of purchase put in writing, and had a contract drawn for execution, by a notary public, which was presented to the defendant for his signature. The defendant refused to sign until some modifications in the contract were made, relating to the personal property. It was then, and on or about the seventeenth of June, signed by both parties. This contract by its express terms provided that: *" The above described property is being sold subject to all leases against the property with the Iroquois Natural Gas Co."*

The evidence shows that in 1910 Busendorf had conveyed to the United Natural Gas Company of Oil City, Penn., a right of way to lay, maintain and operate a pipe line for the transportation of oil or gas over the farm in question, which right of way was subsequently transferred to and is now owned by the Iroquois Natural Gas Company. A pipe line or main eighteen or twenty inches in diameter was actually laid across the farm, and at the time of the contract in question was being operated. In addition to this line,

the Iroquois Natural Gas Company had sunk a gas well on the property which produced gas, some of which was piped to the Busendorf house for domestic purposes, and which, by arrangement, Busendorf had the right to consume without charge to him.

Schultz paid the defendant $2,000 on account of the purchase price of the property, and has paid nothing further.

After the making of the contract and the plaintiff's taking possession, there was delay in closing the deal. A search was furnished by the defendant, and finally the title was rejected by the plaintiff on the alleged ground that the right of way above referred to rendered the title bad. Thereupon a deed was tendered, and a demand made on the plaintiff for a fulfillment of the contract, which he declined, for the reason stated. Thereupon the plaintiff began this action to recover the $2,000 paid, and also to recover certain amounts he claimed to have expended on the property over and above sums received from produce sold.

The defendant in his answer put in issue certain allegations of the complaint, and prays for a specific performance of the contract.

The principal contest on the trial arose over the question whether the defendant tendered a good and marketable title saving and excepting *" all leases now against the property with the Iroquois Natural Gas Co."*

The plaintiff contends that the right of way for the gas main did not come within the exception of "leases," and therefore the defendant could not convey a good title to the premises, and that plaintiff is, therefore, justified in his refusal to carry out the contract.

The defendant contends that the plaintiff before

making the contract was fully informed of the existence of the pipe line across the farm, knew all about it, and that the term " leases " used in the contract was intended to describe and cover such right of way, and to provide the plaintiff should take title subject to it.

On the other hand, the plaintiff contended on the trial that he was ignorant of the existence of the pipe line or the grant, and did not know of it until after the contract had been signed, and his attention called to it by the attorney who examined the title for him.

The court, however, is convinced by the evidence that the plaintiff did in fact know about the pipe line; that he was told of it by the defendant; that it was pointed out to him, and he was shown where it ran. The evidence satisfies the court that in conversations with others after the contract was made, he showed he knew of the pipe line laid across the farm, and made no objection to it, and stated to the attorney for the defendant, referring to the well and line (which gave his house a full supply of gas) that those were " the only things   *   *   *   that made him buy the farm." This was said in connection with the statement that he had paid too much for the farm, and when he evinced a dissatisfaction with his bargain.

We think the contract itself indicates a knowledge of the existence of the right of way for a pipe line. It will be noted that in the contract the word " leases " is used — the plural of the word is employed — indicating the existence of more than one *lease*. The only other lease, if it may be so termed, which existed was that of the gas well on the ten-acre parcel on the opposite side of the highway. So it is fair to presume that the word " *leases* " was intended to describe the well and the right of way, both held and owned by

the Iroquois Natural Gas Company; otherwise the word used would be meaningless, as it could refer to nothing else. We are satisfied, therefore, that when the word " *leases* " was written into the contract, it was intended to describe the very right of way to which objection is now made. The word employed was, it is true, a misnomer, for a grant of a right of way is not, strictly speaking, a lease. We must not, however forget that the contract was not drawn by a lawyer, but by a layman, whose use of legal terms is not so precise and exact as by a member of the legal profession. We can well understand how one not a lawyer might well describe such a grant as a lease, although technically incorrect.

We then come to the question whether a misdescription by name of a thing intended to be described by parties to a contract will justify parties in insisting on the precise and technical meaning of the words. We think not, where the intent is plain as shown by the surrounding facts and circumstances, and that parol evidence may be resorted to for the purpose of ascertaining the real meaning of the term used.

There is this further consideration. This is an equity action, in which equitable relief is asked. It is tried as such. If the contract, in law and in fact, fails to express the real agreement of the parties, and a proper case is made, then the defendant has an equitable right to have the instrument reformed so that it will express that agreement. It is true, the defendant has not asked for a reformation in his answer, but a court of equity in administering justice affords such relief as the facts warrant, and if it be necessary to reform the contract, has the power, as it is its duty to do. *Russell Hardware & Imp. Mfg. Co.*

v. *Utica Drop Forge & Tool Co.,* 195 N. Y. 54; *Jewett* v. *Maytham,* 64 Misc. Rep. 488.

The contract was prepared, not by the defendant, but by the direction of the plaintiff, and should express the real agreement and understanding of the parties to it as orally agreed on before it was drafted.

There are other considerations which we think make it necessary that the decision of this case should be for the defendant. As we have previously stated, the contract of sale and purchase provided that with the realty, the plaintiff was to acquire practically all the personal property on the place. The plaintiff went into possesson both of the farm and of the personal property. He knew, as we have found, of the pipe line and of the grant of right of way. He knew, and must have known, that owing to its nature, it was there to stay, and was beyond the power of the defendant to cause its removal. If the plaintiff objected to its presence and intended to reject the title for those reasons, then he was called on to act promptly in making known his objections, and to do nothing inconsistent with that position. He was called on to act in harmony with that determination. The undisputed evidence is, however, that after knowledge of the alleged defects in title, the plaintiff proceeded to sell and dispose of not only the crops growing on the lands, but also to sell and dispose of the farm equipment, and even of live-stock on the farm. This was done, in part, even after he had in fact objected to the title. The parties could not then be restored to their former position. It should be borne in mind that the contract between the parties called for the sale of not only the land, but of the personal property as well. The plaintiff was not at liberty to repudiate as to the land, and treat the personalty as his own. The entire contract must stand or fall.

Supreme Court, December, 1921.          [Vol. 117.

While it is undoubtedly true that knowledge in the grantee of existing easements does not defeat his right to object to the title (*Pryor* v. *City of Buffalo,* 197 N. Y. 123, 136–137; *Huyck* v. *Andrews,* 113 id. 81; *Callanan* v. *Keenan,* 224 id. 503–508), nevertheless, the purchaser may so deal with the subject matter of the contract that he will be held to have waived objections which otherwise might have been made.

The contract gave the plaintiff no right to appropriate or dispose of any of the personal property on the place until payment had been made according to the terms of the contract. Right of possession gave no right of disposition. Notwithstanding, it is claimed the plaintiff did proceed to sell all the personal property on the farm — certainly a very considerable portion thereof, after he knew about the existing pipe line right of way. We think this action on his part must be construed as a waiver of the defect in title, on which he now insists. The evidence is that after he had knowledge of the existence of the right of way he raised no objection to the title on that account — in fact stated to the attorney for the defendant that the advantages of the gas well and main were the things inducing him to make the purchase, which, however, he afterwards rejected on the ground the farm was not worth what he had agreed to pay for it, and stating he was ready, notwithstanding, to close the deal provided some differences which had arisen about the personal property could be adjusted. This was said in August.

We think, by taking and continuing in possession of the farm, and in disposing of the personal property on it, and by exercising acts of ownership after the alleged defects were known, without any agreement qualifying his acts, the plaintiff must be deemed to have waived the defects complained of. The authorities support this view of the case.

The continuance of the possession by a vendee is a constant and continued affirmance on his part that the holding is under it, and conclusively proves that the contract has not been abandoned. *Northrup* v. *Mead,* 121 App. Div. 385, 390. And so it has been held that a purchaser of real property must surrender possession of the property acquired under a contract before he can maintain an action for its rescission. *Tompkins* v. *Hyatt,* 28 N. Y. 347, 350; *Northrup* v. *Mead, supra; Goelth* v. *White,* 35 Barb. 76–78; *More* v. *Smedburgh,* 8 Paige, 600; *Schiffer* v. *Dietz,* 83 N. Y. 300, 308.

So, where there were existing easements affecting the property, and the vendee continued in possession and committed acts of ownership, it was held such conduct amounted to a waiver of any defect in title, and specific performance would be decreed. *Canton Co.* v. *Baltimore & Ohio Rd. Co.,* 79 Md. 424, 431; citing many English authorities.

Fry, in his work on Specific Performance, in discussing the general principles governing cases of this character, says: " So with regard to the contract itself — if the defendant contends that it is a nullity, and, after having become aware of the facts on which he relies for this contention, has gone on acting as though there was a subsisting contract, he will be estopped from subsequently taking the objection." § 1346, p. 656 (5th ed.).

So, where an estate was subject to a reservation of rights of sporting, and where the vendor could not cure, if the vendee takes possession with knowledge, he was held to have waived the right to object to the reservation in question. *Burnell* v. *Brown,* 1 J. & W. 168. To this effect, see cases cited by Fry on Specific Performance, pages 655, 656.

The application of these principles to the facts of this case seem to compel a decision for the defendant.

The contract must be treated as an entirety, in so far as it relates to both real and personal property. The plaintiff has dealt with the personal property as his own; he has sold and disposed of it for his own benefit, after full knowledge of the alleged defects in the title to the realty. He has continued and still continues in possession. We think he must, under the circumstances, be held to have waived any such defect, and cannot now he heard to insist on the objection raised.

A decision may, therefore, be drawn in accordance with these views, with costs to the defendant.

Ordered accordingly.