(105 So. 659)

**MELTON et al. v. STUART.    (2 Div. 863.)**

(Supreme Court of Alabama.    June 18, 1925. Rehearing Denied Oct. 22, 1925.)

1. **Specific performance ⇔58 — Right to specific performance of contract held not affected by provision of mutual penalties for nonperformance.**

Right to specific performance of contract is not affected by provision of mutual penalties for nonperformance.

2. **Specific performance ⇔66—Vendor of land may maintain bill for specific performance against purchaser.**

Vendor of land may maintain bill for specific performance against purchaser.

3. **Specific performance ⇔6 — Specific performance is not available to one contracting party unless he is capable of performing and may be compelled to perform.**

Specific performance is not available to one contracting party unless he is capable of performing and may be compelled to perform.

4. **Specific performance ⇔95—Equity will not decree specific performance of contract to convey land when vendor has no title.**

Equity cannot and will not decree specific performance of contract to convey land when vendor has no title.

5. **Specific performance ⇔114(4) — Bill for specific performance, alleging that plaintiff tendered deeds conveying interest that plaintiff did not own at time of entering contract, held good on demurrer.**

Bill for specific performance, alleging contract by plaintiff to convey property owned by others, and that plaintiff had tendered deeds from such parties to defendant, was good on demurrer as against objection that contract was uncertain in terms, and that bill did not show ability and readiness to perform because title was shown in persons other than plaintiff.

Appeal from Circuit Court, Wilcox County; S. F. Hobbs, Judge.

Bill in equity by D. T. Stuart against J. E. Melton and Hubert Melton. From a decree overruling a demurrer to the amended bill, respondents appeal. Affirmed.

The bill of complaint is filed by complainant against the respondents to compel specific performance of the following contract:

"State of Alabama, Wilcox County.

"Know all men by these presents, that, D. T. Stuart, party of the first part, and J. E. Melton and Hubert Melton, party of the second part, have entered into the following agreement, to wit:

"The said party of the first part agrees to deliver to the party of the second part deeds from Julia I. Stuart and husband, Rosa Mae Stuart and husband, Corine Shriner and husband, for their entire interest in the estate of J. F. Melton and G. W. Ward, both real and personal. These deeds are to be delivered to the said

party of the second part as soon as they are prepared by attorney.

"The party of the second part upon the delivery of said deeds agrees to execute and deliver to the said party of the first part in payment for property deeded notes as follows: To Julia I. Stuart a note for $3,900 payable November 1, 1924, with interest at 6 per cent. from November 1, 1923; to Rosa Mae Stuart a note for $3,900 payable November 1, 1924, with interest at 6 per cent. from November 1, 1923; Corine Shriner a note for $3,750 payable November 1, 1924, with interest at 8 per cent. from November 1, 1923.

"To secure the notes given Julia I. Stuart and Rosa Mae Stuart, the party of the second part agrees to execute a mortgage on three-sixth of the entire estates above named. To secure the note given Corine Shriner the party of the second part agrees to execute a mortgage on two-sixths of the entire estate above named. If this settlement is not satisfactory to Corine Shriner, the party of the second part agrees to execute a mortgage to Julia I. Stuart and Rosa Mae Stuart on five-sixths of the above named estates, and to assist the party of the second part in securing $3,750 to be paid to Corine Shriner. The party of the first part agrees to sign with the party of the second part a note for $3,750 with interest at 8 per cent. from November 1, 1923, and payable November 1, 1924. And the party of the first part agrees to secure the signature of W. M. Stuart to last named note.

"The party of the second part will receive all money and personal property and assume all debts of the estates above named.

"To assure the fulfillment of the terms and agreements of this contract, the party of the first part and the party of the second part have each placed in the hands of J. T. Adams, president of the Bank of Pine $500, and we hereby authorize and instruct the said J. T. Adams, president of the Bank of Pine, should either party to this contract fail, to carry these terms thereof to pay to the other party $1,000. But should all terms and agreements herein be faithfully carried out by each party then the said J. T. Adams, president of the Bank of Pine Apple, shall return to each party $500.

"It is further agreed and understood that the three notes shall be secured by five-sixths interests in the J. F. Melton estate and five-sixths interest in G. W. Ward estate, but in case of a foreclosure nothing by the five-sixths interest in the two estates shall be bound as security for the two $3,900 notes, but the $3,750 note will not be thus limited. It will be secured as stated above and in addition thereto will be subject to all the rights remedies of any other negotiable waive note.

"Said J. E. Melton and Hubert Melton are to pay all expenses of preparing deeds including court cost and attorney's fees.

"Nov. 19, 1923.    D. T. Stuart.
        "J. E. Melton.
        "Hubert Melton."

Paragraph 4 of the bill alleges:

"4. And complainant avers that, in accordance with said contract, and as soon as the sum was prepared by an attorney, he tendered to the said defendants a good and sufficient deed, conveying to them the entire interest of said Julia I. Stuart, Rosa Mae Stuart and Corine Shriner, in the estate of J. F. Melton and G. W. Ward, both real and personal, and being the entire interest of said parties in said estates at the time of the making of said contract, with the request that said defendants execute the notes and mortgages which they agreed in said contract to execute.

"And complainant avers that Julia I. Stuart and Julia Melton Stuart are one and the same person, and that Rosa Mae Stuart and Rosa Melton Stuart are one and the same person.

"And complainant avers that the said parties of the second part refused to accept said conveyance and refused to carry out and discharge the agreements and obligations imposed upon them by said contract of which Exhibit A is a copy, and still refuse to do so."

Paragraph 5 offers to do equity in the premises, and another paragraph, added by amendment in response to demurrer sustained, alleges:

"And complainant avers that he is now and has heretofore been ready, able, and willing to carry out said contract on his part, and to make delivery to the defendants of the deeds mentioned to the said property, as he has contracted to do in the contract. * * * *"

Respondents demurred to the amended bill on the grounds, substantially, that it is without equity, that it shows an adequate remedy at law, that the contract exhibited shows a want of mutuality, that it is uncertain in its terms, and not susceptible of specific performance, and that the bill does not show ability and readiness to perform because it shows the title is in persons other than complainant.

The respondents appeal from a decree overruling the demurrer.

Pettus, Fuller & Lapsley, of Selma, for appellants.

A contract will be specifically enforced only where there is mutuality of obligation and remedy. 25 R. C. L. 232; Iron Age Pub. Co. v. W. U. Tel. Co., 83 Ala. 498, 3 So. 449, 454, 3 Am. St. Rep. 758.

R. B. Evins, of Birmingham, for appellee.

As to the right of a party to compel specific performance of a contract to convey land, see Bogan v. Daughdrill, 51 Ala. 312. The fixing of a penalty for default does not affect the right to specific performance. 1 Pomeroy's Eq. Jur. (4th Ed.) § 446. Mutuality of remedy need not exist prior to the time of decree. Zirkle v. Ball, 171 Ala. 568, 54 So. 1000; Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818; 5 Pom. Eq. Rem. (2d Ed.) 4930.

SOMERVILLE, J. [1] It is well settled by the authorities that the equitable right to specific performance of a contract is not affected by the provision of mutual penalties for nonperformance. "Where a person has agreed to do a certain act, or to refrain from doing a certain act, and has added a penalty for the

purpose of securing a performance, a court of equity will, if the contract is otherwise one which calls for its interposition, compel the party to specifically perform, or restrain him from committing the act, as the case may be, notwithstanding the penalty. If the sum stipulated to be paid is really a penalty, the party will never be allowed to pay it, and then treat such payment as a sufficient ground for refusing to perform his undertaking." 1 Pom. Eq. Jur. (4th Ed.) § 446, citing, among other cases, Dooley v. Watson, 1 Gray (Mass.) 414.

[2] As to the general equity of a bill by a vendor of land for specific performance against the vendee, the authorities are practically unanimous in sustaining it. 36 Cyc. 565, b, and cases cited in note 50. Our own court does not seem to have dealt with the question, but we are content to follow the generally established rule. The most serious question in the case arises out of the character of the contract—the mutuality vel non of enforceability.

[3, 4] It is an elementary principle of the law of specific enforcement that the remedy is not available to one contracting party unless he himself is capable of performing and may be compelled to perform. Tombigbee Valley R. R. Co. v. Fairford, etc., Co., 155 Ala. 575, 47 So. 88. And it is well settled that a court of equity cannot and will not decree specific performance of a contract for the conveyance of land when the vendor has no title. Fitzpatrick v. Featherstone, 3 Ala. 40; Enslen v. Allen, 160 Ala. 529, 49 So. 430. Counsel for respondents conceive that the foregoing principles should defeat the prayer of this bill for specific performance.

There is an important distinction, however, between nonmutuality of obligation and nonmutuality of remedy. "True it is that a mutuality of obligation must exist when the contract is concluded. If it lack this element ab initio, no subsequent act of the party who seeks to enforce it can obviate the objection and render the contract capable of specific performance." Brown v. Munger, 42 Minn. 482, 44 N. W. 519. The above excerpt was quoted with approval in Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818, where it was also said that "mutuality of remedy need not have existed prior to the decree. 36 Cyc. 623."

Mr. Pomeroy has discussed this question quite fully, and we approve his statement of the law as well supported by the great weight of judicial authority. He says:

"It is a familiar application of the principle as to performance by the plaintiff, that the vendor or lessor can not force performance upon the purchaser, unless he is able to give a good title to the subject-matter. Where, however, the vendor gets in the title before the decree, 'the doctrine of equity is, when time is not of the essence, a decree will be made against the purchaser, if the seller can make a good title at the time of the decree, unless there has been bad faith, or an improper speculation attempted.' The weight of authority supports this rule, although there are several jurisdictions which hold that if the plaintiff could not make a good title at the time of the agreement, specific performance will be denied him on the ground of lack of mutuality. * * * If the vendee knew that the vendor had no title, or a defective title, at the time of the agreement, he has no ground for refusing to perform so long as the title is made good by the time of the decree."

5 Pom. Eq. Jur. (2d Ed.) § 2230. See, also, section 2194. To the last proposition are cited Brashier v. Gratz, 6 Wheat. 528, 5 L. Ed. 322; Old Colony R. R. Corp. v. Evans, 6 Gray (Mass.) 25, 66 Am. Dec. 394; and Canton Co. v. B. & O. R. R. Co., 79 Md. 424, 29 A. 821. Our own case of Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818, is in accord.

In 25 R. C. L. 234, § 34, after referring to the contrary view, it is stated that:

"The better opinion is that it is not essential that the mutuality of remedy shall exist at the inception of the contract, and that where the contract was originally lacking in mutuality this element may be supplied by voluntary performance on the part of the party seeking specific performance"—citing Turley v. Thomas, 31 Nev. 181, 101 P. 568, 135 Am. St. Rep. 667; Woodruff v. Woodruff, 44 N. J. Eq. 349, 16 A. 4, 1 L. R. A. 380; Mut. Life Ins. Co. v. Stephens, 214 N. Y. 488, 108 N. E. 856, L. R. A. 1917C, 809.

[5] We do not think there is any uncertainty in the terms of the contract, and the allegations of the bill make a case for specific performance within the principle above discussed.

Our conclusion is that the demurrers to the bill were properly overruled, and the decree of the circuit court will be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.